389 S.E.2d 194

**Grover RUSSELL and Etta Russell**

v.

**ISLAND CREEK COAL COMPANY and Kenneth Faerber, Commissioner of the West Virginia Department of Energy.**

**No. 19104.**

Supreme Court of Appeals of
West Virginia.

Dec. 20, 1989.

Rehearing Denied Feb. 8, 1990.

---

John McFerrin, John Purbaugh, West Virginia Legal Services Plan, Charleston, for Grover Russell and Etta Russell.

Joseph A. Lazell, Asst. Atty. Gen., Environment and Energy Div., Charleston, for Kenneth Faerber.

James R. Snyder, Jackson & Kelly, Charleston, for Island Creek Coal Co.

McHUGH, Justice:

This case is before the Court upon the appeal of Grover Russell and Etta Russell from the April 19, 1988 order of the Circuit Court of Upshur County, wherein the court granted the appellee, Island Creek Mining Company's motion for summary judgment. The appellants contend that the trial court erroneously granted summary judgment when it held that under the specific provision of the West Virginia Surface Coal Mining and Reclamation Act pled by the appellants, the appellants knowingly waived their private right to obtain damages and equitable relief against the appellee, Island Creek Mining Company, for the alleged contamination of a spring located on the appellants' tract, when they conveyed to the appellee the right to surface mine an adjacent tract and the conveyance contained a waiver of liability for damages to the springs. We affirm.

I

The appellants, the Russells, initially owned approximately sixty-five acres of surface rights in Upshur County, West Virginia. In 1972, they conveyed certain surface rights with respect to roughly sixty acres to Island Creek Coal Company, the predecessor in interest to Island Creek Coal Mining Company.[1] In exchange for $10,000, the Russells conveyed to Island Creek the following surface rights regarding the sixty-acre tract:

> [T]he right to strip the said surface, subsurface and other strata overlying all of said coal; ... the right to deposit anywhere upon the said surface, sub-surface and/or the space remaining after the removal of any of said coal, such earth, rock, stone, slate and other material as may be produced in connection with the operations hereunder ... all *without liability* by the grantee, its successors or assigns, *for damages* arising out of the exercise of such rights to the surface or sub-surface or anything therein or thereon or *to the springs and water courses therein or thereon.*

(emphasis added)

The Russells reserved from their sixty-five acres of surface rights about five acres, which contained their homestead. The disputed spring is on the reserved five-acre tract, very near the southeastern

---

1. Island Creek had previously obtained the sub-    surface rights from a third party.

boundary of the two tracts.[2] Mr. Russell admits that, in 1972, he knew that the source of the spring was located on the sixty-acre tract to which he had conveyed the surface rights to Island Creek. Prior to the conveyance, Mr. Russell dug coal, on the sixty-acre tract, that was within one-quarter mile of the spring.[3]

In 1982, the Commissioner of the West Virginia Department of Energy issued a mining permit, for the sixty-acre tract, which ultimately was transferred to Island Creek.[4]

During 1983, the sixty-acre tract was surface mined and the appellants' spring was allegedly further contaminated. For several years the coal operator attempted to rectify the problem.[5] When the appellants continued to have poor water quality, they filed a civil action in 1988, seeking common-law and equitable relief

due to the alleged noncompliance with the West Virginia Surface Coal Mining and Reclamation Act (WVSCMRA), *W. Va. Code,* 22A–3–1 to 22A–3–40, as amended.[6] They alleged that under their interpretation of the WVSCMRA and the Federal Surface Mining Control and Reclamation Act (SMCRA), 30 *U.S.C.* §§ 1201–1328, as amended, the appellee, Island Creek, was required to replace their water source at the conclusion of its operations in 1983, and its failure to do so resulted in $20,000 in compensatory damages. The appellants also sought equitable relief to require Island Creek to replace their water supply. Both types of relief were pled specifically against Island Creek, and the appellants specifically relied on *W. Va. Code,* 22A–3–24 [1985], discussed *infra,* a provision of the WVSCMRA regulating private water rights.[7]

2. The deed also provides that the Russells "expressly waive the statutory prohibition against mining coal within five feet of a boundary line."

3. He also dug coal from a mine opening on another adjacent property that was 150 yards from the spring. It is undisputed that the spring on the five-acre tract had already been contaminated, to a degree, prior to the 1972 conveyance.

4. The mining permit was issued to Enoxy Coal Company. In 1988, after litigation had commenced, the permit was transferred to the appellee, Island Creek, and Island Creek was substituted for Enoxy Coal Company as the defendant.

5. The coal operator made several attempts to replace the water supply. In 1984, a new well was drilled; however, the underlying surface of the area drilled was composed of sandstone; therefore, the water had a high iron content. In 1986, water purification units were installed.

In 1987, when the purification units failed, a private water quality consulting firm was hired by the coal operator to design a new system. From 1987 until February, 1988, the new system worked sporadically. According to the consultant, the cause may have been either a mechanical malfunction of the units or Mr. Russell's operation of the units.

Based on the record we have before us, it is unclear whether these actions were taken unilaterally by the operator, or whether the operator was fulfilling his permit obligations under *W. Va. Code,* 22A–3–10(a)(11) [1985].

6. Although the contract was made in 1972, long before the passage of the 1980 version of the

WVSCMRA, the mining permit was not issued until 1982 and operations were conducted in 1983. Therefore, the operator is subject to the statute. *See* syl. pts. 2–3, *Cogar v. Faerber,* 179 W.Va. 600, 371 S.E.2d 321 (1988).

7. The appellants also alleged that reclamation of the 60–acre tract was inadequate and untimely under the WVSCMRA. They sought an injunction against the appellee, Island Creek, requiring it to reclaim the land to its "approximate original contour" and pre-mining use, which they alleged was farm land. *See W. Va. Code,* 22A–3–12(b)(2)–(3) [1985]. They also sought injunctive relief against the Commissioner of the Department of Energy requiring the Commissioner to fine Island Creek for its failure timely to reclaim the property to its "approximate original contour" and pre-mining use.

In order to receive a mining permit, the operator must, among other things, provide the Commissioner with a reclamation plan to restore the land to its pre-mining use and "approximate original contour." *W. Va. Code,* 22A–3–10(a)(2)–(4) & 22A–3–12(b)(2)–(3) [1985]. The plan is available for public review. *W. Va. Code,* 22A–3–10(b) [1985].

The appellants alleged below, and in their brief filed with us, that the pre-mining use of the property was farm land. The Commissioner responded that the property was designated in the reclamation plan as forest land. *See* "West Virginia Surface Mining Reclamation Regulations," 2 *W. Va. Code of State Rules* §§ 38–2–7.1 to 38–2–7.3 & 38–2–10.1 to 38–2–10.6 (effective Sept. 5, 1989) (repealing former regulations). The Commissioner inspected and approved the reclamation of the land as being returned to its

All parties moved for summary judgment on the private water rights issue. By order dated April 19, 1988, the trial court granted Island Creek's motion for summary judgment. The court found that, given Mr. Russell's knowledge of the source of the spring, the waiver of private water rights contained in the 1972 deed was specific and knowing in light of the nature of the conveyance, that is, the right to surface mine.

On appeal, the appellants contend that private water rights may not be waived. Alternatively, they argue that in the event private water rights may be waived, the trial court erred in concluding that the appellants knowingly waived them. Both appellees, the Commissioner of the Department of Energy and Island Creek, contend that the appellants' position that private water rights may not be waived is not supported in either the pertinent state or federal provisions.

The 1972 deed waived the right to recover damages to the springs and water courses on the sixty-acre tract. The WVSCMRA, specifically, *W.Va.Code*, 22A-3-24 [1985], the provision of the Act regulating private water rights, specifically permits owners of an interest in real property to waive their private water rights:

> (a) Nothing in this article shall be construed as affecting in any way the rights of any person to enforce or protect, under applicable law, his interest in water resources affected by a surface-mining operation.

> (b) Any operator shall replace the water supply of an owner of [an] interest in real property who obtains all or part of his supply of water for domestic, agricultural, industrial or other legitimate use from an underground or surface source where such supply has been af-

fected by contamination, diminution or interruption proximately caused by such surface-mining operation, *unless waived by said owner.*

(emphasis added)

The federal counterpart to *W.Va.Code*, 22A-3-24 [1985], namely, 30 *U.S.C.* § 1307 (1988), is identical to the state provision, except it does not contain the last phrase, "unless waived by said owner."

## II

■ The appellants first contend that although the deed contained a waiver, and although the WVSCMRA clearly permits waivers of private water rights, all such waivers are invalid because the WVSCMRA is, according to the appellants, in conflict with the federal provision, which is silent as to such waivers. Therefore, the appellants urge the Court to read the state provision in a manner that is consistent with its federal counterpart, which they contend would require us to strike the language regarding the possible waiver of private water rights, contained in *W.Va.Code*, 22A-3-24(b) [1985]. *See* syl. pt. 1, *Canestraro v. Faerber*, 179 W.Va. 793, 374 S.E.2d 319 (1988).

As discussed in *Canestraro*, 30 *U.S.C.* §§ 1201–1328, as amended, contain the federal statutory law regarding the regulation of surface mining. However, under the primacy concept embodied in 30 *U.S.C.* §§ 1211, 1253 and 1255, the federal legislation allows states to adopt their own surface-mining reclamation statutes and regulations. In doing so, the state assumes primary jurisdiction. If a state chooses to become the primary regulator of surface mining, however, its laws must be at least as stringent as the federal law, or the state risks federal intervention and loss of its

pre-mining use, forest land, and approximate original contour by complete backfilling and grading of the property.

Because there is no evidence in the record to support the appellants' contention that the land has not been reclaimed in accordance with *W.Va.Code*, 22A-3-10 & -12 [1985], we affirm that portion of the trial court's order granting summary judgment in favor of the appellee regarding its failure to reclaim the land. *See* syl.

pts. 4–5, *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971).

Further, the order also properly granted summary judgment on the appellants' contention that the Commissioner was required to fine Island Creek, as the language of *W.Va.Code*, 22A-3-17(c) [1985] is not mandatory: "Any person ... who violates any permit condition or who violates any other provision of this article ... may also be assessed a civil penalty."

status as the primary regulator. *See Canestraro*, 179 W.Va. at 794, 374 S.E.2d at 320.

■ Therefore, in syllabus point 1 of *Canestraro v. Faerber*, we held:

When a provision of the West Virginia Surface Coal Mining and Reclamation Act, *W.Va.Code*, 22A–3–1 *et seq.*, is inconsistent with federal requirements in the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, the state act must be read in a way consistent with the federal act.

*Accord*, syl. pt. 2, *Cogar v. Sommerville*, 180 W.Va. 714, 379 S.E.2d 764 (1989).

Since the adoption of the WVSCMRA, the Court has had three occasions to consider whether various provisions of the WVSCMRA are consistent with the federal statute. When the state statute, on its face, is inconsistent with the federal statute, we have read the requirements of the federal statute into the state statute. In other instances, where the inconsistency is not immediately apparent by a mere comparison of the two provisions, we have been required to consider other sources to fully understand and compare the two statutory provisions. In doing so, we have relied on: the legislative intent of the state and federal statutes (protection of the public and the environment); state regulations; federal regulations promulgated by the Secretary of the Interior; and a group of federal court decisions interpreting the federal rules, commonly referred to as the *Perma-nent Surface Mining Regulation Litigation*.[8]

In *Canestraro v. Faerber*, 179 W.Va. 793, 374 S.E.2d 319 (1988), we were considering a WVSCMRA provision that was facially inconsistent with the federal statute. In *Canestraro*, the state act allowed coal operator permit applications to be filed for public inspection "in the nearest office of the department of energy[.]" *W.Va.Code*, 22A–3–9(c) [1985]. The department has six regional offices. The federal statute required that the application be filed "at the courthouse of the county or an appropriate public office ... where the mining is proposed to occur[.]" 30 *U.S.C.* § 1257(e) (1982). The statutes regarding public access to permit applications were clearly inconsistent. Therefore, without further inquiry, we read the state statute as requiring the filing of permit applications in the county courthouse where the proposed mining would occur or in an equally accessible public office.

The first case, where we were required to examine other sources to determine the consistency of a state provision with its federal counterpart, was *Cogar v. Faerber*, 179 W.Va. 600, 371 S.E.2d 321 (1988) (*Cogar I*). A coal company sought to expand its mining operations to within 300 feet of an occupied dwelling, in contravention of *W.Va.Code*, 22A–3–22(d)(4) [1985]. The expansion was approved by the State Department of Energy, which found that the coal company came under an exception to the WVSCMRA, concerning "operations" with "valid existing rights," *W.Va.Code*, 22A–3–

8. As explained by the court in *National Wildlife Federation v. Hodel*, 839 F.2d 694, 702 (D.C.Cir. 1988), after promulgating interim regulations to implement the 1977 federal statute, the Secretary of the Interior promulgated the permanent surface mining regulations in 1979. In three opinions the District Court for the District of Columbia decided over 100 issues raised primarily by coal operators challenging the interim regulations in *In re Permanent Surface Mining Regulation Litigation I*, 13 E.R.C. 1586 (D.D.C. 1979) (preliminary injunction); *In re Permanent Surface Mining Regulation Litigation I*, 14 E.R.C. 1083 (D.D.C.1979) ("PSMRL I (Round I)"); *In re Permanent Surface Mining Regulation Litigation I*, 19 E.R.C. 1477 (D.D.C.1980) ("PSMRL I (Round II)").

In 1983, the Secretary of the Interior re-promulgated some of the regulations and created "flexible regulations." Thirty issues concerning the regulations were challenged by various environmental groups in four separate cases in *In re Permanent Surface Mining Regulation Litigation II, Round I*, 21 E.R.C. 1193 (D.D.C.1984) ("PSMRL II (Round I)"); *In re Permanent Surface Mining Regulation Litigation II, Round II*, 21 E.R.C. 1724 (D.D.C.1984) ("PSMRL II (Round II)"); *In re Permanent Surface Mining Regulation Litigation II, Round III–VER*, 22 E.R.C. 1557 (D.D.C.1985) ("PSMRL II (Round III–VER)"); *In re Permanent Surface Mining Regulation Litigation II, Round III*, 620 F.Supp. 1519 (D.D.C.1985) ("PSMRL II (Round III)"), *aff'd in part and rev'd in part sub nom. National Wildlife Federation v. Hodel*, 839 F.2d 694 (D.C.Cir.1988).

22(d) [1985]. The state and federal statutes did not clearly define "operations" with "valid existing rights," and the state regulation provided little assistance to the Court. *Cogar I*, 179 W.Va. at 603 & n. 2, 371 S.E.2d at 324 & n. 2. Therefore, we examined the detailed federal regulation which narrowly construed the terms "operations" with "valid existing rights" and noted that the rule was approved, in substance, by the United States Court of Appeals for the District of Columbia Circuit during the course of the *Permanent Surface Mining Regulation Litigation* in *National Wildlife Federation v. Hodel*, 839 F.2d 694, 747–48 (D.C.Cir.1988). *Cogar I*, 179 W.Va. at 603, 371 S.E.2d at 325. We then read the "operations" with "valid existing rights" exception to the provisions contained in *W.Va.Code*, 22A–3–22(d) [1985] in a manner consistent with the federal rule. *See* syl. pt. 3, *Cogar I*. In doing so, we noted that such a reading was required to meet the overall purpose of the statute, specifically, protection of the public from the adverse consequences of surface mining. Syl. pt. 1, *Cogar I*, and 179 W.Va. at 603, 371 S.E.2d at 324.

Later, in *Cogar v. Sommerville*, 180 W.Va. 714, 379 S.E.2d 764 (1989) (*Cogar II*), we were again required to examine other sources to determine the consistency of the state provision with its federal counterpart. In *Cogar II*, we considered the waiver of subjacent support, which was permitted under both the state statute, *W.Va.Code*, 22A–3–22(d)(4) [1985] and the federal statute, 30 *U.S.C.* § 1272(e)(5) (1988). Several coal companies sought to enforce waivers of subjacent support contained in old, broad form coal severance deeds from 1907 and 1914 against the successors in title to the surface. While both statutes permitted waivers, neither statute defined the type of language necessary to effectuate a valid waiver.

As in *Cogar I*, we noted that the state regulations were of little assistance. *Cogar II*, 180 W.Va. at 718, 379 S.E.2d at 767.

However, the federal regulation concerning waivers of subjacent support were extensive and exacting. The federal regulation regarding waivers of subjacent support explicitly required that the waiver "clarify that the owner ... had the legal right to deny mining and knowingly waived that right ... [to mine] within a closer distance of the dwelling as specified." 30 *C.F.R.* § 761.12(e)(1) (1988).

Furthermore, we relied on the federal district court's interpretation of the regulation regarding waivers of subjacent support during the *Permanent Surface Mining Regulation Litigation*. We noted that the district court found that the regulation regarding the waiver of subjacent support was intended to place additional requirements beyond those already contained in the common law: " 'Moreover, the common law, while it does establish the substantive standards of knowledge, intention, and voluntariness, fails to specify the requisite form of waiver. The Secretary's regulation seeks to ensure these standards are protected; it is, therefore, consonant with the Act.' " *Cogar II*, 180 W.Va. at 718, 379 S.E.2d at 768 (quoting *Permanent Surface Mining Regulation Litigation*, 14 E.R.C. 1083, 1092 (D.D.C.1980)).

■ The exacting federal regulation regarding waivers of subjacent support, though consistent with our common law, expanded upon our common-law test concerning the validity of waivers, in general, in coal severance deeds. The common-law test was restated in syllabus point 3 of *Cogar II*:

'A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution.' Syllabus Point 2, *Conley v. Hill*, 115 W.Va. 175, 174 S.E. 883 (1934), *overruled on other grounds, Thornton v. Charleston Area Medical Center*, 158 W.Va. 504, 213 S.E.2d 102 (1975).

*See also* syl., *Rose v. Oneida Coal Co.*, 180 W.Va. 182, 375 S.E.2d 814 (1988).

Using the reasoning of syllabus point 1 of *Canestraro,* we in *Cogar II* read our state statute regarding waivers of subjacent support in a manner consistent with the federal provisions regarding such waivers and concluded that the old, broad form coal severance deeds that waived "all damages" did not contain "the type of explicit waiver contemplated by and required by" the WVSCMRA provisions regarding the waiver of subjacent support. Syl. pt. 4, *Cogar II.*

In the case now before us, unlike in *Canestraro,* the state provision concerning water rights is not facially inconsistent with its federal counterpart. The federal provision simply does not speak to waivers. As in *Cogar I* and *II,* the state regulations are of no assistance.[9] Unfortunately, unlike in the *Cogar* cases, the federal regulations under 30 *U.S.C.* § 1307 (1988) are virtually identical to the statute, and, therefore, also do not explicitly indicate whether waivers of private water rights are permissible.[10]

However, we are once again able to gain insight into the matter from the federal litigation surrounding the Secretary of Interior's implementing rules. Our research reveals that this is the only state or federal court decision which touches upon the private water rights provisions of 30 *U.S.C.* § 1307 (1988).

During the course of the *Permanent Surface Mining Regulation Litigation* cases, certain coal companies argued that they had protected water rights under 30 *U.S.C.* § 1307(a), controlled by state common law, that would not require them to replace all water sources under 30 *U.S.C.* § 1307(b). *See* the penultimate paragraph

of section I of this opinion for the text of *W.Va.Code,* 22A–3–24(a) and (b) [1985], which is identical to 30 *U.S.C.* § 1307(a) and (b) (1988), except for the language contained in *W.Va.Code,* 22A–3–24(b), "unless waived by said owner."

In response to the coal companies' contentions, the Secretary of the Interior, during the course of litigation at the district court level, reinterpreted the federal regulation regarding 30 *U.S.C.* § 1307(a) and (b) (1988), namely, 30 *C.F.R.* § 816.41(h) (1988), as being deferential to state common law:

> The Secretary agrees that sec. 717(a) [30 *U.S.C.* § 1307(a)] requires deference to state water law on questions of water use, and thus interprets sec. 717(b) [30 *U.S.C.* § 1307(b)] and the rule at issue as *not* requiring the replacement of water supplies *to the extent a surface coal mine operator consumes or legitimately uses* the water supply under a senior water right determined under applicable State law.

*National Wildlife Federation v. Hodel,* 839 F.2d 694, 756 (D.C.Cir.1988) (sources omitted).

The reinterpreted regulation was upheld by the district court and the National Wildlife Federation appealed. On appeal, the Federation argued—in a manner strikingly similar to the judicial interpretation of the federal subjacent support regulation—that the Secretary's reinterpretation of the federal regulation regarding private water rights was contrary to the federal statute. The Federation contended that Congress intended to deny all rights to coal operators, and instead intended to provide additional remedies to affected owners, beyond

**9.** No state regulations exist concerning the particular provision.

**10.** 30 *C.F.R.* § 816.41(h) (1988), which is virtually identical to 30 *U.S.C.* § 1307(b), provides, in pertinent part:

> (h) *Water rights and replacement.* Any person who conducts surface mining activities shall replace the water supply of an owner of

[an] interest in real property who obtains all or part of his or her supply of water for domestic, agricultural, industrial, or other legitimate use from an underground or surface source, where the water supply has been adversely impacted by contamination, diminution, or interruption proximately resulting from the surface mining activities.

those previously available under state common law. The appellate court rejected the argument and upheld the Secretary's reinterpretation, noting that the federal statute

> creates an additional remedy against *illegitimate* water uses, but does not deprive anyone, including mine operators, of whatever rights to the use of water they had previously.... Moreover, throughout the SMCRA, Congress expressed a concern for preserving existing property rights, and for not interfering with state determination of those rights.

839 F.2d at 757 (emphasis added).

Unlike *Cogar II*, regarding waivers of subjacent support, the federal regulation regarding waivers of private water rights and subsequent federal litigation as to the regulation evince a lack of federal intent to place more exacting measures than those already enforced through state law. This lack of federal intent to regulate stringently the subject of private water rights is also evinced by the Secretary of the Interi-

or's *approval of various state reclamation programs*. Our research reveals that West Virginia is not alone in its failure to adopt, *verbatim*, the federal private water rights provision contained in 30 *U.S.C.* § 1307 (1988). In fact, of the states whose surface coal mining programs, in whole, have been approved by the Secretary of the Interior as being consistent with the Federal Surface Mining Control and Reclamation Act—as required by 30 *U.S.C.* § 1253 (1988) in order to maintain primacy—more than half of the programs do not contain a statutory provision which adopts 30 *U.S.C.* § 1307 (1988) *verbatim*. Numerous state surface coal mining reclamation acts, which have been approved, in whole, by the Secretary of the Interior, do not speak to private water rights; but, instead, regulate water rights *solely* through the permit process, whereby the coal operator, in exchange for the right to surface mine, given by the state, assumes certain reclamation duties, owed to the state.[11]

---

**11.** Of the twenty-two jurisdictions, other than West Virginia, that have adopted state surface coal mining reclamation acts and have maintained federal approval as the primary regulator of the industry under 30 *U.S.C.* § 1253 (1988), ten states have adopted language identical or nearly identical to the federal act, which does not address waivers: Alabama, *Ala.Code* § 9-16-97 [1981]; Alaska, *Alaska Stat.* § 27.21.930 [1982]; Arkansas, *Ark.Stat.Ann.* § 15-58-107 [1979]; Illinois, *Ill.Ann.Stat.* ch. 96½, para. 7903.24 [Smith-Hurd 1980]; Iowa, *Iowa Code Ann.* § 83.24 [West 1979]; Louisiana, *La.Rev.Stat.Ann.* § 30:930 [West 1978]; Missouri, *Mo.Ann.Stat.* § 444.905 [Vernon 1979] (additional language in the statute requires regulations on the use of explosives in surface coal mining operations); Texas, *Tex.Rev.Civ.Stat.Ann.* art. 5920-11, § 37 [Vernon 1985]; Utah, *Utah Code Ann.* § 40-10-29 [1979]; Virginia, *Va.Code Ann.* § 45.1-258 [1979] (adopting only the language contained in 30 *U.S.C.* § 1307(b)).

Twelve states, in addition to West Virginia, have adopted provisions regarding water rights that are not identical to the federal provision, none of which have been challenged under the primacy requirement of 30 *U.S.C.* § 1253 (1988) that state provisions be in accordance with the minimum requirements of the federal act: California, *Cal.Pub.Res.Code* § 2772(e) & (j) [West 1975] (the operator must provide the state regu-

latory agency with information regarding the effects on adjacent streams and lands in its reclamation plan and submit a statement that it accepts responsibility for reclaiming the land in accordance with the plan in order to obtain a permit; the statute does not indicate a private right of action); Colorado, *Colo.Rev.Stat.* § 34-33-136 [1979] (adopts state common law regarding private water rights); Hawaii, *Haw.Rev.Stat.* § 181-6 [1984] (does not speak to water rights or water replacement requirements in reclamation plans); Idaho, *Idaho Code* § 47-1506 [1973] and § 47-1513(e) & (f) [1988] (requiring reclamation plans for surface waters within proposed surface mining operations and providing for the use of forfeiture bonds and civil penalties for reclamation violations); enforcement actions may be filed by the regulatory agency or by the attorney general); Indiana, *Ind.Code Ann.* § 13-4.1-8-1 [Burns 1986] (adopting the federal language; however, placing it within the permit conditions); Kentucky, *Ky.Rev.Stat.Ann.* § 350.421 [Michie/Bobbs-Merrill 1980] (this statute is identical to the federal provision; however, in 1984 the legislature adopted *Ky.Rev.Stat.Ann.* § 381.945 [Michie/Bobbs-Merrill 1984] (which allows the surface owner in a coal severance deed to direct "how the property shall be left after extraction ... in compliance with federal and state rules and regulations"; *see Akers v. Baldwin*, 736 S.W.2d 294 (Ky.1987) for general discussion); Maryland, *Md.Nat.Res.*

Our state legislature has specifically chosen to permit owners of an interest in real property to waive their private water rights in mineral conveyances, by including the language in *W. Va. Code*, 22A–3–24(b) [1985]. The statute is also consistent with state common law. The obstruction or diversion of water rights is governed generally by the doctrine of reasonable use. *See* syl. pt. 4, *Roberts v. Martin*, 72 W.Va. 92, 77 S.E. 535 (1913). *See also* syl. pt. 2, *Morris Associates, Inc. v. Priddy*, 181 W.Va. 588, 383 S.E.2d 770 (1989). In order to recover damages the plaintiff is required to show negligence. *See* syl. pt. 1, *O'Dell v. McKenzie*, 150 W.Va. 346, 145 S.E.2d 388 (1965). However, specifically with respect to mineral severance deeds, the surface owner's and the coal operator's respective water rights and the reasonableness of the parties' use of their respective

rights are outlined by the terms of the deed, from which it must be determined whether "the use of the surface by the owner of the minerals has exceeded the fairly necessary use thereof, and whether the owner of the minerals has invaded the rights of the surface owner, and thus exceeded the rights possessed by the owner of such minerals." *Adkins v. United Fuel Gas Co.*, 134 W.Va. 719, 724, 61 S.E.2d 633, 636 (1950).

In two cases concerning broad form mineral severance deeds that resulted in the diversion or contamination of a surface owner's waters, we have held that the diversion or contamination, *without subsidence*, and without evidence of unreasonable operations, as envisioned in the deed, results in *"damnum absque injuria."* Syl. pt. 4, *Drummond v. White Oak Fuel*

Code Ann. § 7–519 [1988] (the statute, although adopting the language of 30 *U.S.C.* § 1307(a) & (b), also provides for an administrative hearing and judicial review for a determination of causation of adverse effects on water supply, before releasing permit bond of operator); New Mexico, *N.M.Stat.Ann.* § 69–25A–26(E)(2)(c) [1979] and §§ 69–25A–29 and –30 [1979] (the state allows the administrative agency to determine whether the permittee's proposed operations will affect the "long-range productivity of water supply"; the issuance of the permit and any orders or modifications of orders subsequently issued under the permit are reviewable by the administrative agency and the district court; any person having an interest may utilize the review procedures; the court may provide equitable relief); *N.M.Stat.Ann.* § 69–25A–24 [1979] also provides for citizen suits, permitting equitable relief, but not restricting any statutory or common-law relief otherwise afforded); *N.M.Stat.Ann.* § 69–25A–23(B) [1979] (operator may forfeit permit bond after state regulatory agency evaluates reclamation and considers, *inter alia*, "the probability of continuance or future occurrence of" surface or subsurface water pollution "and the estimated cost of abating such pollution"); North Dakota, *N.D.Cent.Code* §§ 38–14.1–14(1)(*o*) & (r)(13) and 38–14.1–14(2)(h), (i) & (j) [1989] and § 38–14.1–40(4) [1989] (requiring control of surface water drainage to the satisfaction of the agency and allowing citizen suits for injunctive and monetary damages for permit violations); Ohio, *Ohio Rev. Code Ann.* § 1513.15(H) & (I) [Anderson 1981]

(allows a civil action for damages incurred by real property owners whose water is contaminated or diminished by an operator; the water source must be "an underground source other than a subterranean stream having a permanent, distinct, and known channel"; subsection (I) also contains language somewhat similar to 30 *U.S.C.* § 1307(b)); Pennsylvania, *Pa.Stat. Ann.* tit. 52, § 1396.18(a) [Purdon 1984] and tit. 35, §§ 691.315(d) & 691.601 [Purdon 1980] (in its permit application statute, the state specifically obligates an operator to restore the recharge capacity of waters to approximate premining conditions; permit fees and forfeiture bonds are placed in a separate fund; the state then provides for a *public* abatement of nuisance action if an operator fails to comply with the permit application requirement regarding the restoration of the recharge capacity of waters; the action is brought in the name of the Commonwealth and has been interpreted by one court as not providing a private right of action for damages, *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1150–51 (E.D.Pa.1982)); South Dakota, *S.D.Codified Laws Ann.* § 45–6B–33(4) (1989) (requires the agency to deny a permit if the loss of domestic water supplies and recharge cannot be "satisfactorily mitigated"); *S.D.Codified Laws Ann.* § 45–6B–44 [1987] (facilitates adjacent landowner participation in the reclamation plan considerations); *S.D.Codified Laws Ann.* §§ 45–6B–52 [1982], 45–6B–70 [1988] (equitable remedies and civil penalties for violations may be sought by the agency).

*Co.*, 104 W.Va. 368, 140 S.E. 57 (1927); *see Adkins v. United Fuel Gas Co.*, 134 W.Va. 719, 725, 61 S.E.2d 633, 636 (1950). *Cf.* syl. pt. 2, *Johnson v. Junior Pocahontas Coal Co.*, 160 W.Va. 261, 234 S.E.2d 309 (1977) (emphasizing factual inquiries). Further, in the syllabus of *Stamp v. Windsor Power House Coal Co.*, 154 W.Va. 578, 177 S.E.2d 146 (1970), we held that a coal severance deed authorizing the grantee to mine without leaving subjacent support and containing a specific waiver of liability for damages to water courses barred an action for damages to the surface. *See also Ison v. Daniel Crisp Corp.*, 146 W.Va. 786, 788, 791, 122 S.E.2d 553, 554, 556 (1961) (the conveyance of the right to surface mine to a coal operator, containing a waiver of "all claims ... for damages arising from ... pollution or diversion or obstruction of streams," barred an action against the operator for the subsequent diversion of water).

Of course, any waiver of a right in a mineral severance deed must be one that is within the contemplation of the parties. Syl. pt. 3, *Cogar v. Sommerville*, 180 W.Va. 714, 379 S.E.2d 764 (1989).

We have reviewed the federal statutory provision, the federal regulation, the Secretary of the Interior's interpretation of the regulation, which was approved by the federal court in *National Wildlife Federation*, and the provisions of other state reclamation acts that have met the approval of the Secretary of the Interior. We have also reviewed *W.Va.Code*, 22A–3–24 [1985], which, consistent with our common law, acknowledges that a mineral severance deed controls the private water rights of the parties to the deed. Based upon the foregoing, we hold that *W.Va.Code*, 22A–3–24(b), as amended, part of the West Virginia Surface Coal Mining and Reclamation Act, which requires a coal operator to replace the water supply of an owner of an interest in real property whose water supply has been affected by contamination,

diminution or interruption proximately caused by the surface-mining operation, but which statute further provides that the replacement of the water supply may be waived by the owner, is not inconsistent with the parallel federal provision contained in 30 *U.S.C.* § 1307(b), part of the Surface Mining Control and Reclamation Act.

Therefore, if the owner knowingly waived the requirement that the water supply be replaced, a private cause of action seeking money damages and equitable relief because of a violation of *W.Va.Code*, 22A–3–24(b) [1985] may not be maintained by the owner for the loss of the water supply. *See infra* note 12.

While 30 *U.S.C.* § 1307(b) (1988) is silent as to waivers, that silence alone does not render the state provision inconsistent. As discussed in this opinion, all the sources traditionally used by this Court in interpreting the provisions of the Federal Surface Mining Control and Reclamation Act indicate that the intent of 30 *U.S.C.* § 1307 (1988) was to defer to state law in the matter of private water rights.

### III

■ We now consider whether the trial court properly granted summary judgment to the appellee, Island Creek.

The appellants argue, in the alternative, that even if the waiver language of *W.Va. Code*, 22A–3–24(b) [1985] is consistent with the federal provision, the trial court erroneously granted summary judgment to the appellee, Island Creek, by determining, as a matter of law, that the appellants knowingly waived their private water rights.

Normally, the reasonable use of private water rights is a question of fact, to be determined by the trier of the facts. Syl. pt. 2, *Morris Associates, Inc. v. Priddy*, 181 W.Va. 588, 383 S.E.2d 770 (1989). However, as stated earlier, when a party to a mineral conveyance alleges that his or

her private water rights have been affected as a result of the conveyance, the terms of the conveyance determine the reasonableness of the use. *Adkins v. United Fuel Gas Co.*, 134 W.Va. 719, 61 S.E.2d 633 (1950).

In *Adkins,* the Court not only articulated the substantive law on private water rights of the parties to mineral conveyances but also articulated the procedural standard for determining when it is necessary to submit the issues to the trier of the facts. Because the rights of the parties are governed primarily by the deed, "we do not think that whether plaintiff's [a surface owner's] rights have been invaded, or whether the defendant [mineral owner] has exceeded its rights are questions of fact for determination of the jury. *In a case where there is a dispute of fact,* the jury should find the facts[.]" (emphasis added) *Adkins,* 134 W.Va. at 724, 61 S.E.2d at 636. *Cf.* syl. pt. 2, *Johnson v. Junior Pocahontas Coal Co.,* 160 W.Va. 261, 234 S.E.2d 309 (1977) (coal severance deed containing a waiver of liability for damages to surface; summary judgment for coal operator reversed due to factual issues as to possible intentional torts or nuisance).

Of course, in reading the instrument of conveyance, the rights of the parties and the determination of whether the waiver of such rights is knowing and specific must be "construed in light of the conditions and reasonable expectations of the parties at the time it is made." *Cogar v. Sommerville,* 180 W.Va. 714, 379 S.E.2d 764, 769 (1989).

In this case, the trial court was not faced with any disputed facts as to the rights or knowledge of the parties. The conveyance is not in the form of an old, generally worded coal severance deed but is a 1972 conveyance of the right to surface mine sixty acres, explicitly without liability for damages to "the springs and watercourses therein or thereon," in exchange for $10,-000. There is no factual question regarding the rights acquired by Island Creek. Both parties were fully aware of the type of mining and attendant effects that would occur. *Cf. West Virginia–Pittsburgh Coal Co. v. Strong,* 129 W.Va. 832, 837, 42 S.E.2d 46, 49 (1947) ("strip" mining not contemplated); syl. pt. 1, *Lowe v. Guyan Eagle Coals, Inc.,* 166 W.Va. 265, 273 S.E.2d 91 (1980) (usage or custom will affect meaning of a written contract if it was generally followed at the time and place of the contract's execution and, therefore, was within the contemplation of the parties). The appellants have never alleged that mining operations were conducted in an intentionally tortious manner or even in a negligent manner, but only that their stream has been contaminated by mining operations. *Cf. Johnson v. Junior Pocahontas Coal Co.,* 160 W.Va. 261, 234 S.E.2d 309 (1977) (alleging willful, wanton and reckless conduct as well as, in essence, a nuisance; not within the parties' contemplation).

Equally, there is no factual question as to the appellants' knowledge of the extent of the waiver. Mr. Russell admits that he knew in 1972 when he reserved the five-acre tract containing the spring, that the source of the spring was located on the sixty-acre tract that would be surface mined. The spring is near a boundary of the two tracts. The deed also expressly waived the statutory prohibition (then in existence) of mining within five feet of a boundary. Prior to the conveyance, Mr. Russell, himself, dug coal on the sixty-acre tract within one-fourth mile of the spring.

Based upon these facts, the trial court properly granted summary judgment to the appellee, because the waiver was specific, knowing and, under the circumstances, clearly contemplated by the parties. The conveyance of the right to surface mine, with its attendant effects, was knowingly negotiated by the appellants, in exchange for which the appellants in 1972 received $10,000.

## IV

Based upon all of the foregoing, the trial court properly concluded that *W. Va. Code*, 22A–3–24(b) [1985], which permits the waiver of private water rights, is consistent with 30 *U.S.C.* § 1307(b) (1988), and in this instance barred the appellants' action for $20,000 in damages and other relief against the appellee, Island Creek Coal Company, because the appellants knowingly waived their private water rights when they conveyed the surface rights to the sixty-acre tract to Island Creek.[12]

Affirmed.

---

**12.** We are mindful, nonetheless, of the overall public purpose of the statute, specifically, the protection of persons and property from the environmental havoc and health and safety hazards caused by surface mining operations which are not followed by proper reclamation. *See W. Va. Code,* 22A–3–2(a) [1985]. In this case, the appellants specifically pled their cause of action regarding their water rights under *W. Va. Code,* 22A–3–24(b) [1985]. This provision of the Act regulates private rights. Only an "owner of [an] interest in real property" may bring the action against a coal operator, and the relief awardable to the owner is limited to the replacement of the owner's water supply. A valid waiver of a private cause of action by one owner does not serve as a waiver of private causes of action of other owners. Further, such a private contractual waiver does not serve as a waiver of the public right to regulate surface mining operations. Public rights and duties are articulated elsewhere in the statute. Under these provisions, owners of an interest in real property who have otherwise validly waived their right to damages or other relief under *W. Va. Code,* 22A–3–24(b) [1985], as well as any other interested person, may bring an enforcement action against the Commissioner to assure that the coal operator is meeting his permit obligations, owed to the state, and to assure that the Commissioner of the Department of Energy is performing his duty to enforce the coal operator's obligations owed to the state under the surface mining permit. *See W. Va. Code,* 22A–3–25 [1985]. Under *W. Va. Code,* 22A–3–10(a)(12) [1985], a coal operator seeking a surface mining permit must include in its reclamation plan proposal the location of subsurface waters and their chemical properties. Under *W. Va. Code,* 22A–3–10(a)(11) [1985], the operator must also provide:

A detailed description of the measures to be taken during the surface-mining and reclamation process to assure the protection of: (A) The quality of surface and ground water systems, both on- and off-site, from adverse effects of the surface-mining operation; (B) the rights of present users to such water; and (C) the quantity of surface and ground water systems, both on- and off-site, from adverse effects of the surface-mining operation or to provide alternative sources of water where such protection of quantity cannot be assured[.]

*W. Va. Code,* 22A–3–17(a) [1985] provides for an administrative cessation of operations upon information that the operator has not complied with the terms of the WVSCMRA. If the violation is not abated, *W. Va. Code,* 22A–3–17(b) [1985] provides for a public administrative hearing on the matter, following which the Commissioner may revoke the permit, resulting in bond forfeiture, which must be expended on the areas for which it was posted. *See supra* note 11 for a collection of jurisdictions having state reclamation statutes providing for administrative adjudication of water rights but not having a separate provision comparable to 30 *U.S.C.* § 1307 (1988) on private water rights.

These provisions were not pled by the appellants and the record before the Court does not contain any of the pertinent documents under these provisions or any administrative determination based upon such documents. *See supra* note 5. Therefore, regardless of the validity of the appellants' waiver of their private rights to damages and other relief vis-a-vis Island Creek under *W. Va. Code,* 22A–3–24(b) [1985], we need not consider whether the Commissioner of the Department of Energy is required to assure that Island Creek has honored its commitments to the state as set forth in its reclamation plan, in exchange for which Island Creek received the permit to surface mine in the State of West Virginia.