466 S.E.2d 794

**Walter J. ROSE and Ruth O. Rose, Plaintiffs Below, Appellants,**

**v.**

**ONEIDA COAL COMPANY, INC., a West Virginia Corporation, Defendant Below, Appellee.**

**No. 22606.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 1995.

Decided Dec. 8, 1995."

---

728

Robert J. Shostak, Athens, Ohio, Patrick E. McFarland, Hague & McFarland, Parkersburg, for Appellants.

W.T. Weber, Jr., W.T. Weber, III, Weber & Weber, Weston, for Appellee.

MILLER, Justice:

The plaintiffs below and appellants herein, Walter J. Rose and Ruth O. Rose, own the surface of some land located in Braxton County and assert that the Circuit Court of Braxton County erred in granting a summary judgment against them in their civil action for damages against Oneida Coal Company, Inc. (Oneida), the defendant below and appellee herein. Mr. and Mrs. Rose claim Oneida, through its underground coal mining, destroyed their water supply as well as caused subsidence to the surface of their property. This appeal is a sequel to *Rose v. Oneida Coal Company, Inc.*, 180 W.Va. 182, 375 S.E.2d 814 (1988) (*Rose I*), where we held that a waiver of the right of subjacent support contained in a prior severance deed foreclosed the common law right to obtain damages. We did, however, indicate that recent legislation involving mining regulations might modify the common law rule.[1]

The case was remanded and the Roses amended their complaint to allege a violation of the West Virginia Surface Coal Mining and Reclamation Act (WVSCMRA) and, in particular, W.Va.Code, 22A–3–24 (1985), which deals with the protection of water rights.[2] The procedural basis for their suit was under W.Va.Code, 22A–3–25(f) (1985), which allows damages for violation of the Act.[3]

As to the plaintiffs' claim of surface damage from subsidence, they assert that surface damage is regulated under W.Va.Code, 22A–3–14(b)(1) (1985).[4] Under W.Va.Code, 22A–

---

1. The Syllabus in *Rose I* states:

   "Under the West Virginia common law of property, the well recognized and firmly established rule is that when a landowner has conveyed the minerals underlying the surface of his land, he retains the right to the support of the surface in its natural state, but the owner of land may release or waive his property right of subjacent support by the use of language that clearly shows that he intends to do so; however, this law has been modified to some extent by the enactment of the West Virginia Surface Coal Mining and Reclamation Act, *W.Va.Code*, 22A–3–1 [1985], *et seq.* and the extent of such modification will be ruled upon when properly presented."

2. W.Va.Code, 22A–3–24, states:

   "(a) Nothing in this article shall be construed as affecting in any way the rights of any person to enforce or protect, under applicable law, his interest in water resources affected by a surface-mining operation.

   "(b) Any operator shall replace the water supply of an owner of interest in real property who obtains all or part of his supply of water for domestic, agricultural, industrial or other

legitimate use from an underground or surface source where such supply has been affected by contamination, diminution or interruption proximately caused by such surface-mining operation, unless waived by said owner."

This provision is now found in W.Va.Code, 22–3–24 (1994).

3. W.Va.Code, 22A–3–25(f), states:

   "Any person or property who is injured in his person through the violation by any operator of any rule, regulation, order or permit issued pursuant to this article may bring an action for damages, including reasonable attorney and expert witness fees, in any court of competent jurisdiction. Nothing in this subsection shall affect the rights established by or limits imposed under state worker's compensation laws."

This provision is now found in W.Va.Code, 22–3–25(f) (1994).

4. W.Va.Code, 22A–3–14(b), states, in pertinent part:

   "Each permit issued by the commissioner pursuant to this article and relating to under-

3–14(a) (1985), the Commissioner must promulgate separate regulations directed toward the surface effects of underground coal mining operations, which regulations may not conflict with or supersede applicable federal laws or regulations.[5] Moreover, in addition to these statutes, the plaintiffs contend surface damage from subsidence through underground mining is controlled by the federal Surface Mining Control and Reclamation Act under 30 U.S.C. § 1266 (1977)[6] and its accompanying regulation found in 30 C.F.R. § 817.121.[7]

From a factual standpoint, there appears to be no significant dispute on the material facts. Oneida conducted underground mining operations beneath the plaintiffs' property. In the 1915 deed which severed the mineral estate from the surface, there was general language waiving any liability for damage to the land or overlying strata or surface.[8] There is no dispute that Oneida's mining resulted in damage to the surface, as well as loss of water from springs and the house well.

On April 4, 1994, the trial court ruled that the loss of surface water was not protected under W.Va.Code, 22A–3–24(b), because it relates only to loss because of "surface-mining operations."[9] With regard to the plaintiffs' claim that damage to the surface was protected under W.Va.Code, 22A–3–14(b)(1), the court held that surface protection was not required by this statute nor the applicable federal statute and state and federal regulations.

### I.

■■■ Our standard of review for a circuit court's granting of summary judgment is set out in Syllabus Points 1 and 2 of *Jones v. Wesbanco Bank Parkersburg*, 194 W.Va. 381, 460 S.E.2d 627 (1995):

"1. 'A circuit court's entry of summary judgment is reviewed *de novo*.' Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

"2. ' " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).' Syl. pt. 2, *Painter v.*

---

ground coal mining shall require the operation as minimum to:

"*(1) Adopt measures consistent with known* technology in order to prevent subsidence causing material damage to the extent technologically and economically feasible, maximize mine stability and maintain the value and reasonably foreseeable use of overlying surface lands, except in those instances where the mining technology used requires planned subsidence in a predictable and controlled manner: Provided, That this subsection does not prohibit the standard method of room and pillar mining[.]"

W.Va.Code, 22–3–14(b) (1994), now contains this language.

**5.** W.Va.Code, 22A–3–14(a), provides:

"The commissioner shall promulgate separate regulations directed toward the surface effects of underground coal mining operations, embodying the requirements in subsection (b) of this section: Provided, That in adopting such regulations, the commissioner shall consider the distinct difference between surface coal mines and underground coal mines in West Virginia. Such regulations may not conflict with or supersede any provision of the federal or state coal mine health and safety laws or any regulation issued pursuant thereto."

This language is now found in W.Va.Code, 22–3–14(a) (1994).

**6.** See note 14, *infra*, for the text of 30 U.S.C. § 1266.

**7.** See note 15, *infra*, for the text of 30 C.F.R. § 817.121.

**8.** The pertinent language from the 1915 deed is:

"[T]here is reserved and excepted from this conveyance all the coal ... in, upon and underlying the tract hereby conveyed, with the right to enter upon and under said land to mine and remove all of said coal under said tract ... without being liable for any injury to said land, or to any thing therein or thereon, by reason of the mining and removal of said coal therefrom, and the coal from neighboring lands, without being required to provide for the overlying strata or surface."

**9.** For the text of W.Va.Code, 22A–3–24(b), see note 2, *supra*.

*Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)."

■ Moreover, when we consider matters involving an interpretation of a statute or regulation made by a circuit court, we also apply a *de novo* standard of review as stated in Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

### II.

Initially, we determine whether the loss of surface water through underground mining is protected under the WVSCMRA. In embarking on such an inquiry, we are mindful that the Federal Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. § 1201, *et seq.*, also applies. We recognized in Syllabus Point 1 of *Russell v. Island Creek Coal Co.,* 182 W.Va. 506, 389 S.E.2d 194 (1989), that where there is a difference between our state provisions and the federal act, we must interpret our act to be consistent with the federal act:

" 'When a provision of the West Virginia Surface Coal Mining and Reclamation Act, *W.Va.Code,* 22A–3–1 *et seq.*, is inconsistent with federal requirements in the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, the state act must be read in a way consistent with the federal act.' Syl. pt. 1, *Canestraro v. Faerber,* 179 W.Va. 793, 374 S.E.2d 319 (1988)."

*See also Cogar v. Sommerville,* 180 W.Va. 714, 379 S.E.2d 764 (1989).

In *Canestraro,* 179 W.Va. at 795, 374 S.E.2d at 319, we made a detailed analysis of various provisions of the SMCRA that dealt with state programs regulating surface coal mining and came to these conclusions:

"Clearly, Congress intended that state provisions be no less stringent or effective than the federal provisions.

\*　　\*　　\*　　\*　　\*　　\*

... "[W]hen there is a conflict between the federal and state provisions, the less restrictive state provision must yield to the more stringent federal provision[.]"

This quoted language clearly expresses the concept of the primacy of federal law governing the operations of surface coal mining over less stringent state law and guides us where there is any conflict.

The plaintiffs appear to concede that at the time the surface water damage occurred, the federal provision which is in 30 U.S.C. § 1307 (1977) of the SMCRA[10] did not apply to underground mining as determined in *National Wildlife Federation v. Hodel,* 839 F.2d 694, 754 (D.C.Cir.1988), where the court held that this section applied only to surface mines and not to underground mines:

"We conclude from the text as well as the legislative history of the water replacement provision, and from other provisions distinguishing between surface and underground mining, that Congress explicitly recognized the difference between surface and underground mines; that it deliberately chose to apply some environmental safeguards to one and not the other; and that water replacement is a provision it explicitly required only of surface mine operators."

The plaintiffs claim that because W.Va. Code, 22A–3–24, is not worded in precisely the same language as the federal act, we should find that it does protect surface water from underground mining.[11] The plaintiffs seize on the initial phrase in subsection (b) that "[a]ny operator shall replace the water supply of an owner of interest in real property" to claim this covers both surface and underground mining. However, this approach ignores the remaining portion of the subsection that speaks to the water supply being "affected by contamination, diminution or interruption proximately caused by such surface-mining operations[.]"

---

**10.**　30 U.S.C. § 1307(b) states:

　　"The operator of a surface coal mine shall replace the water supply of an owner of interest in real property who obtains all or part of his supply of water for domestic, agricultural, industrial, or other legitimate use from an underground or surface source where such sup-

ply has been affected by contamination, diminution, or interruption proximately resulting from such surface coal mine operation."

**11.**　For the text of W.Va.Code, 22A–3–24, see note 2, *supra.*

It must be remembered that the WVSCMRA, as its title indicates, is designed primarily to regulate the operation of surface mines. The key language of this section is that the damage to the water supply "caused by such mining operation." This language is consistent with the federal act and we give deference to the federal court's holding in *Hodel* that deep mining operations are excluded. Moreover, our customary approach in interpreting a statute is to give effect to each of its parts as we explained in Syllabus Point 2 of *State ex rel. Holmes v. Gainer*, 191 W.Va. 686, 447 S.E.2d 887 (1994):

> " ' " 'In ascertaining legislative intent, effect must be given to each part of the statute and the statute as a whole so as to accomplish the general purpose of the legislation.' Syl.Pt. 2, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl.Pt. 3, *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984).' Syllabus Point 3, *Jeffrey v. Jeffrey*, 188 W.Va. 476, 425 S.E.2d 152 (1992)."

It should be noted that this case differs from *Russell v. Island Creek Coal Co., supra*, where we dealt with a surface mine operation that destroyed the landowner's surface water supply. Clearly, W.Va.Code, 22A-3-24(b), applied to the surface mining activity. The only issue in *Russell, supra*, was the exception in that section which allowed the surface owner to waive this statutory right to surface water protection. In 1972, the Russells conveyed to Island Creek the right to surface mine on a sixty-acre parcel. The deed contained language waiving Island Creek's liability for damages arising out of the mining, including damage to springs or water courses on the surface.

We held this was a sufficiently precise waiver to exclude the Russells' ability to seek damages against Island Creek for loss of surface water. We emphasized in *Russell, supra*, that W.Va.Code, 22A-3-24(b), expressly recognized this statutory protection could be "waived by said owner."[12]

Here, we are dealing with an underground coal mine whose operations caused loss to surface water. As we pointed out, W.Va. Code, 22A-3-24(b), as well as its federal counterpart, does not apply to underground coal mining but only to surface mining.

Consequently, we conclude that neither W.Va.Code, 22A-3-24(b) [now W.Va. Code, 22-3-24 (1994) ], of the WVSCMRA nor its federal counterpart in 30 U.S.C. § 1307 of the SMCRA relating to the replacement of surface water, is applicable to the operation of an underground coal mine.[13]

### III.

When we turn to the question of whether the damage to the land itself which occurred from Oneida's underground mining can be compensated, we find that it can be.

Both federal and state regulations require underground operators to adopt all measures technologically and economically feasible to prevent subsidence causing material damage or reducing the value and reasonably foreseeable use of surface lands. This general requirement is contained in 30 U.S.C. § 1266

---

12. For the text of W.Va.Code, 22A-3-24(b), see note 2, *supra*.

13. The plaintiffs also claim that our common law as to waiver of surface water damage by virtue of the waiver agreement in the 1915 severance deed should be reconsidered as the waiver language was insufficient to cover surface water damage. However, this common law principle was resolved against the plaintiffs in *Rose I*. We decline to address this issue because of *res judicata* principles, which we explained in Syllabus Point 1 of *State ex rel. Hamrick v. LCS Services, Inc.*, 186 W.Va. 702, 414 S.E.2d 620 (1992):

> " 'An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata*.' Syl. pt. 1,

(1977), of SMCRA [14] and its applicable regulation is found in 30 C.F.R. § 817.121(c)(1) (1987).[15]

A discrepancy existed between the text of 30 U.S.C. § 1266, which required an underground mine operator to adopt measures to prevent surface subsidence, and the regulation in Section 817.121(c)(1) that the operator shall "[c]orrect any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible" by restoring the land resulting from subsidence. The claim was made in *Hodel, supra,* that the regulatory duty to correct any material damage exceeded the permissible scope of the statutory language. The *Hodel* court, after an extended discussion of the question, came to this conclusion:

> "For the Secretary to construe that language as authorizing a regulation requiring the restoration of subsided land is certainly not inconsistent with the section's language: 'maintaining the value' of land may well require restoring it after it has been damaged." 839 F.2d at 741.

Our regulation, 38 C.S.R. 2. § 16.2(a),[16] is derived from W.Va.Code, 22A–3–14(a), which directs the Commissioner to promulgate "regulations directed toward the surface effects of underground coal mining operations[.]" The regulations must embody the requirements in subsection (b) of this section.[17] Subsection (a) provides that the "regulations may not conflict with or supersede any provision of the federal or state coal mine health and safety laws[.]" [18]

While there may be some minor variations in the language of W.Va.Code, 22A–3–14, and the federal counterpart and their respective regulations, we find nothing that allows us to arrive at a different result from that reached in *Hodel, supra.* Certainly, under the rule of primacy recognized in *Canestraro, supra,* and its progeny, we are required to give deference to the federal law.

The defendant appears to recognize this law because it states in its initial appellate brief: "The federal and state regulations require underground operators to 'adopt all

---

*Sayre's Adm'r v. Harpold,* 33 W.Va. 553, 11 S.E. 16 (1890). (emphasis in original)."

**14.** The applicable language of 30 U.S.C. § 1266 states:

> "(b) Each permit issued under any approved State or Federal program pursuant to this chapter and relating to underground coal mining shall require the operator to—
> "(1) adopt measures consistent with known technology in order to prevent subsidence causing material damage to the extent technologically and economically feasible, maximize mine stability, and maintain the value and reasonably foreseeable use of such surface lands, except in those instances where the mining technology used requires planned subsidence in a predictable and controlled manner: *Provided,* That nothing in this subsection shall be construed to prohibit the standard method of room and pillar mining[.]"

**15.** The applicable language of Section 817.121 states:

> "(a) The operator shall either adopt measures consistent with known technology which prevent subsidence from causing material damage to the extent technologically and economically feasible, maximize mine stability, and maintain the value and reasonably foreseeable use of surface lands; or adopt mining technology which provides for planned subsidence in a predictable and controlled manner. Nothing in this part shall be construed to pro-

hibit the standard method of room-and-pillar mining.
> "(b) The operator shall comply with all provisions of the approved subsidence control plan prepared pursuant to § 784.20 of this chapter.
> "(c) The operator shall—
> "(1) Correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible, by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence[.]"

**16.** 38 C.S.R. 2 § 16.2(a) states:

> "Each person who conducts underground mining activities shall either adopt measures consistent with known technology which prevent subsidence from causing material damage to the extent technologically and economically feasible, maximize mine stability, and maintain the value and reasonably foreseeable use of surface lands; or adopt mining technology which provides for planned subsidence in a predictable and controlled manner. Nothing in this part shall be construed to prohibit the standard method of room-and-pillar mining."

**17.** For the text of W.Va.Code, 22A–3–14(b), see note 4, *supra.*

**18.** The text of W.Va.Code, 22A–3–14(a), is found in note 5, *supra.*

measures *technologically and economically feasible* to prevent subsidence causing *material* damage or reducing the value or reasonably foreseeable use of surface lands.' 30 C.F.R. § 817.121(c)(1) (1987) 38 C.S.R. 2 § 16.2(a) (1989)." (Emphasis in original). What is missing from this acknowledgement is the provision in Section 817.121(c)(1) that requires restoration.

The defendant contends that the right to assert subsidence damage to the surface can be waived by the surface owner, citing *Rose I* where we held that under the common law right to surface support a landowner could waive this right by appropriate language. Here, however, we deal with a statutory right to restore surface lands damaged by subsidence from underground mining. There is nothing in W.Va.Code, 22A–3–14, nor its federal counterpart in 30 U.S.C. § 1266 that allows a landowner to waive this statutory right as was permitted in 30 U.S.C. § 1307 and W.Va.Code, 22A–3–24(b), relating to the loss of surface water through surface mining. As we earlier pointed out, *Russell, supra,* recognized that a landowner could waive his right to protection of his surface water sources from surface mining but this was because both the state and federal statutes specifically allowed such a waiver right. W.Va.Code, 22A–3–24(b); 30 U.S.C. § 1307.[19]

■ Consequently, we conclude that pursuant to W.Va.Code, 22A–3–14 [now W.Va. Code, 22–3–14 (1994) ], and 30 U.S.C. § 1266 of the federal SMCRA and their accompanying regulations, the operator of an underground mine is required to correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence.[20]

For the foregoing reasons, the judgment of the Circuit Court of Braxton County is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.

MILLER, J. (Retired), sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

19. In *Smerdell v. Consolidation Coal Co.,* 806 F.Supp. 1278, 1284 (N.D.W.Va.1992), the court viewed *Russell, supra,* as recognizing that a "pre-SMCRA waiver may validly extinguish rights afforded under SMCRA[.]" This statement ignored the key component in *Russell* that surface water protection statutes, both federal and state, provide a waiver right. Such is not the case under the subsidence statutes. W.Va.Code, 22A–3–14; 30 U.S.C. § 1266. This same distinction appears to be overlooked in a note entitled *Subjacent Support: A Right Afforded to Surface Estates Alone?*, 97 W.Va.L.Rev. 1111, 1131 (1995). Moreover, the court in *Smerdell,* recognized

"that plaintiffs have not timely raised the statutory rights provided under SMCRA and WVSCMRA in their civil action." 806 F.Supp. at 1284.

20. We note that both under W.Va.Code, 22A–3–25(f), which is set out in note 3, *supra,* and its federal counterpart in 30 U.S.C. § 1270(f), a "person who is injured in his ... property through the violation by any operator of any rule, regulation ... may bring an action for damages (including reasonable attorney and expert witness fees) [.]"