375 S.E.2d 814

**Walter J. ROSE and Ruth O. Rose**

v.

**ONEIDA COAL CO., INC.**

**No. 18206.**

Supreme Court of Appeals of
West Virginia.

Dec. 13, 1988.

---

Joseph W. McFarland, Parkersburg, for appellants.

W.T. Weber, Jr., Weston, for appellee.

NEELY, Justice:

Appellants are the surface owners of three tracts totalling approximately 50 acres in Braxton County. Their land was part of a 1,546 acre parcel that was conveyed in 1915 by a severance deed to P.J. Berry. The 1915 deed conveyed the sur-

face to Mr. Berry and reserved all the coal, and right to mine the coal without being liable

for any injury to said land, or to anything therein or thereon, by reason of the mining and removal of said coal therefrom, and the coal from neighboring lands, without being required to provide for the overlying strata or surface.[1]

Oneida Coal Company is the assignee of the coal mining rights contained in this reservation. Appellant landowners purchased the tracts comprising their 50 acres in 1978 and 1980, allegedly without actual notice of the 1915 reservation. The deeds conveying the tracts to appellants stated that appellants took the land subject to all prior reservations and exceptions contained in the chain of title.

Oneida conducted underground mining operations during June and July, 1983. Appellants filed an action for common law negligence in the Circuit Court of Braxton County alleging in their complaint that Oneida "wilfully, negligently and wantonly" caused their water supply to disappear and their land to subside. In addition to the damage to their land and water, appellants alleged that they suffered severe mental anguish[2] and demanded judgment against Oneida in the amount of $400,000 compensatory, and $250,000 punitive damages.

During discovery, appellants admitted the existence and text of the deed reservations and waiver of liability quoted above. Oneida made a motion for summary judgment. The circuit court found that there

---

1. The complete text of the reservation is:
   But there is reserved and excepted from this conveyance all the coal, oil and gas and other miners in, upon and underlying the tract hereby conveyed, with the right to enter upon and under said land to mine and remove all of said coal under said tract and to remove upon and under said land the coal from neighboring lands, together with all necessary and convenient rights of way through and under said land, and the right to keep and maintain all necessary roads and ways in and through said mines forever, with all reasonable privileges for ventilation, pumping and draining the water from said mines, making ventilating shafts and operating the same, to remove the coal upon and under the said land, and to remove the coal under neighboring lands, and the right to construct and operate railroads and other means necessary to transport and market the coal underlying said tract of land and neighboring lands, without being liable for any injury to said land, or to any thing therein or thereon, by reason of the mining and removal of said coal therefrom, and the coal from neighboring lands, without being required to provide for the overlying strata or surface.

2. They also allege that appellant Ruth Rose suffered a heart attack as a result of the subsidence damage.

were no material facts in dispute and held that the waiver of liability in the deed reservation was enforceable against appellants. The court then granted defendant's motion for summary judgment. Appellants appeal to this Court arguing that we should set aside the waiver of liability in the 1915 severance deed as contrary to public policy.

This Court has long upheld contractual waivers of liability for damage from subsidence. As we stated in *Winnings v. Wilpen Coal Co.*, 134 W.Va. 387, 59 S.E.2d 655 (1950):

> The well recognized and firmly established rule is that when a landowner has conveyed the minerals underlying the surface of his land, he retains the right to the support of the surface in its natural state unless it clearly appears, by express words or by necessary implication, that he has released, waived, or qualified his right to such support. [Citations omitted.] The owner of land, however, may release or waive his property right of subjacent support by the use of language which clearly shows that he intends to do so. [Citations omitted.]

134 W.Va. at 390–91, 59 S.E.2d at 658.

The appellants may have a cause of action with regard to their subsided land under the West Virginia Surface Coal Mining and Reclamation Act, ("WVSCMRA") *W.Va.Code*, 22A–3–1 [1985], *et seq.*[3] In support of their common law negligence theory appellants cite a case decided under another state's counterpart to WVSCMRA, *Melvin v. Old Ben Coal Co.*, 610 F.Supp. 131 (S.D.Ill.1985); however, appellants did not plead or argue WVSCMRA below or in this Court.

Although we believe that WVSCMRA has changed many of the old common law rules concerning the rights and remedies of surface owners *vis a vis*

mineral owners, the dimensions of those changes are as yet uncertain. In spite of the fact that the federal counterpart of WVSCMRA has been in effect since 1979, and that every state having substantial coal mining activity has enacted its own version of the legislation, there is but one case, *Melvin v. Old Ben Coal Co.*, 610 F.Supp. 131 (S.D.Ill.1985), that addresses the provisions of the Act relevant in such a case as this. Certainly we will one day need to address the changes made by WVSCMRA, but we shall await a case where the Act has been pled below and the legal and factual issues raised under it have been fully developed in the circuit court. In the case before us, appellants are not collaterally estopped from bringing a new action based on WVSCMRA; however, with regard to the case of common law negligence pled below and the circuit court's decision under those pleadings, the judgment of the Circuit Court of Braxton County is affirmed.

AFFIRMED.

3. Underground coal operators whose operations cause subsidence resulting in material damage to land must restore the land to a condition capable of supporting uses it was capable of supporting before subsidence. *See W.Va.Code*, 22A–3–14 [1985], formerly *W.Va.Code*, 20–6–14 [1980], and particularly 38 CSR 2–7C. State regulations promulgated under the Act have been modified over the years as the federal regulations were changed. The WVSCMRA re-

quires at least some coal operators to restore damaged water supplies. *W.Va.Code*, 22A–3–24 [1985]. However, the Act specifically recognizes the enforceability of waivers with respect to the requirement to restore water supplies. The Act also provides for citizen suits against the state, its agencies, or coal operators to enforce the provisions of the Act. *See W.Va.Code*, 22A–3–25 [1985].