475 S.E.2d 467

**Charles SCHULTZ and Claudia Schultz, Plaintiffs Below, Appellants,**

v.

**CONSOLIDATION COAL COMPANY, A Foreign Corporation, and Bert Shelek, Defendants Below, Appellees.**

No. 23174.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1996.

Decided July 12, 1996.

Robert J. Shostak, Shostak Law Office, Athens, OH, Michael W. McGuane, Haranzo & McGuane, Thomas C. Schultz, Wheeling, for Appellants.

Dean K. Hunt, Jackson & Kelly, Lexington, KY, Brann Altmeyer, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, for Appellees.

WORKMAN, Justice:

Charles and Claudia Schultz appeal the May 22, 1995, final order of the Circuit Court of Marshall County, granting summary judgment to the Appellees, Consolidated Coal Co. ("Consol") and Bert Shelek, in connection with the Appellants' attempt to set aside a subsidence agreement they entered into with Consol. Based on our review of the record, the parties' briefs and arguments, and all other matters submitted before this Court, we find that the lower court committed no error in granting summary judgment and, accordingly, we affirm.

## I.

The Appellants own the surface estate to a parcel of real property in Marshall County, West Virginia, including two dwellings, one of which the Appellants occupy, and the other of which they lease. Consol owns the coal mineral estate underlying the Appellants' property pursuant to coal severance deeds that were recorded in Marshall County. The severance deeds contain the following provision:

> Together with all the rights and privileges necessary and useful in the mining, removing and manufacturing of the said coal *including the right of mining the same without leaving any support for the overlying stratus and without liability for any injury which may result to the surface from the breakage of said strata,* the right of ventilation and drainage, and of access to the mines for men and materials; the shafts or openings for such purposes, however, to be in the ravines and waste places upon said lands, and not nearer than Forty rods of the principal buildings thereon. Also, the right of mining, ventilating, draining and transporting the coal of other lands through the mines and openings in and upon the lands of the party of the first part, *and generally freed and discharged from all servitude to overlying land and everything therein and thereon* .... (Emphasis added).

On March 29, 1989, Consol provided the Appellants with written notice by certified mail, that based upon its mining projections, the company would soon begin mining beneath or adjacent to the Appellants' property. The letter advised the Appellants to contact Mr. Bert Shelek, Consol's land agent, if they had any questions concerning the scheduled mining activities.

On February 5, 1992, in response to the Appellants' request, Mr. Shelek met with the Appellants at their residence to discuss Con-

sol's intention to begin underground mining operations beneath the Appellants' farm and home in August of 1992. Mr. Shelek provided the Appellants with an unsigned copy of a proposed document entitled "Subsidence Agreement." The Appellees state in their brief that the purpose of the agreement was to provide a mechanism for repair of the Appellants' property and to compensate them for their inconvenience and possible subsidence damages resulting from the underground mining.

Subsequently, the Appellants conferred with their attorney, Mike McGuane, regarding the terms of the subsidence agreement. By letter dated June 25, 1992, Mr. McGuane advised Mr. Shelek that he was representing the Appellants and inquired as to whether Consol intended to undermine the Appellants' property. In this letter, Mr. McGuane specifically asked whether Consol believed that it had the authority to undermine within 300 feet of the Appellants' dwellings under the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"), West Virginia Code §§ 22A-3-1 to -40 (1993).[1] By letter dated July 14, 1992, Mr. Shelek confirmed to Mr. McGuane that Consol intended to undermine the Appellants' property and advised him that it was Consol's position that "it may longwall underneath your client's dwellings without violating the ... [WVSCMRA]."[2]

The Appellants allege that Mr. Shelek went to their home on several occasions after his initial visit and told them that Consol could mine under their property and cause damage without liability.[3] According to the Appellants, Mr. Shelek proceeded to tell them that in order to be compensated for any damages resulting from the mining operations they had to sign the subsidence agreement, otherwise they would "get nothing."

On or about August 14, 1992, the Appellees allege that Mr. Schultz, after consulting with his counsel, telephoned Mr. Shelek and requested that a meeting be scheduled for the Appellants to sign the agreement, and for Consol to remit the "up front" cash payment of $21,500 proposed under the agreement. On August 17, 1992, Mr. Shelek met with the Appellants at their home and obtained an executed agreement.[4] In accordance with the agreement, on September 4, 1992, Consol paid the Appellants the "up front" money by check.

In late August or early September 1992, during the course of Consol's longwall mining operation,[5] the Appellants reported to Consol suspected incidents of subsidence-related damage to their structures and water supplies.[6] Consol maintains that it has pro-

---

1. In 1994, the legislature repealed West Virginia Code §§ 22A-3-1 to -40. The current version of the WVSCMRA is found at West Virginia Code §§ 22-3-1 to -32 (1994 & Supp.1995).

2. According to record, the Appellants originally argued that Consol knowingly committed fraud because it did not have a right to underground mine within 300 feet of the Appellants' dwelling without their consent. The Appellants, however, abandoned this theory after their own expert testified during deposition that the provision upon which the Appellants relied for their fraud cause of action was inapplicable to subsidence caused by underground mining.

3. For purposes of the summary judgment motion, Consol did not dispute that the statements attributed to Mr. Shelek were made by him.

4. The Appellants asserted that their attorney was on vacation and, therefore, was unable to advise them. Through this assertion, the Appellants imply that they entered into the Subsidence Agreement without consulting with their attorney. The record, however, indicates that they

did not receive the "up front" money until over two weeks after signing the agreement. Certainly there was time for consulting with their attorney prior to cashing the Appellees' check.

5. It is important to note that the mining operations were conducted pursuant to all required permits issued by the West Virginia Department of Energy ("DOE") (now known as the Division of Environmental Protection ("DEP")), the entity charged with administering the WVSCMRA.

6. As we held in *Rose v. Oneida Coal Co.*, 195 W.Va. 726, 466 S.E.2d 794 (1995) ("*Oneida II*"), "[n]either the West Virginia Surface Coal Mining and Reclamation Act, W. Va.Code, 22A-3-24(b) [now W. Va.Code, 22-3-24 (1994)], nor its federal counterpart in 30 U.S.C. § 1307 of the Surface Mining Control and Reclamation Act relating to the replacement of surface water, is applicable to the operation of an underground coal mine." 195 W.Va. at 727, 466 S.E.2d at 795, Syl. Pt. 3. Consequently, there was no legal requirement for underground coal mining operations to replace surface water supplies at the time the underground mining operations occurred in the instant

ceeded to address these reported incidents in accordance with the terms of the agreement and the provisions of West Virginia's surface mining regulations.[7]

## II.

### STANDARD OF REVIEW

 Our review of a circuit court's entry of summary judgment is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Further,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at 190, 451 S.E.2d at 756, Syl. Pt. 4. Consequently, the Appellants have the burden of proving that the Appellees committed fraud. As we stated in syllabus point one of *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981):

> The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that the plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).

case. *See id.* We do note, however, that under the passage of the national Energy Policy Act of 1992, SMCRA was amended to require underground mining operations to replace water supplies damaged by mining conducted after October 24, 1992.

7. The Appellants have never alleged that Consol has breached the terms of the subsidence agreement.

8. We note at the outset that Consol does not dispute its obligation as a mine operator to restore the land to a condition capable of supporting the uses the land was capable of supporting prior to the mining activity. *See* Syl. Pt. 4, *Oneida II*, 195 W.Va. at 727–28, 466 S.E.2d at 795–96. While the Appellants tangentially argue that they are also entitled to damages from Consol for harm caused to their property by under-

167 W.Va. at 272–73, 280 S.E.2d at 67, Syl. Pt. 1. Accordingly, in order to uphold the circuit court's entry of summary judgment in the Appellees' favor, we must determine whether the Appellants failed to make a sufficient showing on any of the above-mentioned essential elements of fraud.

## III.

### STATUS OF DEED WAIVERS

The crux of the Appellants' argument centers upon whether Consol was indeed legally liable for damage to structures on the Appellants' property at the time its agent represented to them that it was not.[8] The Appellants contend that Consol knew or had reason to know that the law in effect in West Virginia during the time their land agent, Mr. Shelek, was talking to them required Consol to repair subsidence damage to structures or compensate the owner for damages to structures, regardless of any deed waiver the Appellees may have previously obtained. Consequently, the Appellants maintain that Mr. Shelek's statement that they must sign the subsidence agreement before Consol engaged in underground mining or Consol would owe them nothing for any damage which might occur was an obvious false statement intended to coerce them into signing the agreement. In contrast, the Appellees assert that the Appellants wrongfully contend that Consol intentionally made a material false representation to them, because the deed damage waiver

ground coal mine subsidence, they preface their entitlement to such damages upon alleged misrepresentations that Consol's agent made regarding Consol's duty to repair damage to structures. In other words, the Appellants mix apples with oranges by claiming that they are entitled to *property damages* from mine subsidence because of alleged misrepresentations Consol made regarding its duty to repair *damages to structures*. First, the Appellees never made any misrepresentations regarding Consol's duty to restore any damage to the Appellants' property and, the Appellees have not disputed their duty to restore the land in compliance with *Oneida II*. *See id.* Since we ultimately conclude that the Appellants failed to present sufficient evidence to prove that the Appellees intentionally deceived them with material and false misrepresentations, we find no merit regarding any claim to property damages. *See* Syl. Pt. 1, *Lengyel*, 167 W.Va. at 272–73, 280 S.E.2d at 67.

relating to structures was not legislatively invalidated on June 1, 1991.

## A.

### THE REGULATIONS

In order to ascertain whether the Appellees fraudulently misrepresented to the Appellants that they had the right to mine under their property without consequent liability to repair any damage to the structures upon the Appellants' property, it is necessary to review a rather convoluted history of the statutory and regulatory provisions for subsidence mining in this state. In 1979, the Office of Surface Mining Reclamation and Enforcement ("OSM"), an agency within the United States Department of the Interior, initially developed regulations for underground mines pursuant to the Surface Mining Control and Reclamation Act ("SMCRA"), 30 United States Code Annotated §§ 1201 to 1328 (West 1986). 44 Fed. Reg. 14902 (March 13, 1979). The pertinent federal regulation contained a provision requiring "each person who conducts underground mining which results in subsidence that causes material damage ... [to][r]estore, rehabilitate or remove and replace each damaged structure ... to the condition it would be in if no subsidence had occurred...." *Id.* at 15440 (codified at 30 C.F.R. § 817.124(b)(1)). In the alternative, under this regulation the person also could either purchase the damaged structures or facilities or compensate the surface structure owners by the amount of diminution in value to the structure caused by the subsidence. *Id.* at 15440–41 (codified at 30 C.F.R. § 817.124(b)(2) & (c)). This regulation did not expressly state whether it invalidated existing deed waivers pursuant to state common law allocating the risk of subsidence damage.[9] In 1981, the state adopted the identical version of the above-mentioned federal provision.[10]

On June 1, 1983, the OSM revised the subsidence regulation to require an operator either to correct or compensate material damage from subsidence damage to structures or facilities "[t]o the extent required under State law." 48 Fed.Reg. 24652 (June 1, 1983) (codified at 30 C.F.R. § 817.121(c)(2)). Specifically, the OSM commented that "to the extent a waiver of surface support is recognized under State law ... it will be given effect with respect to structures and facilities under § 817.121(c)." 48 Fed.Reg. 24645 (June 1, 1983). On November 16, 1983, the OSM approved West Virginia's revised regulation that similarly deferred to state law in regard to subsidence damage to structures:

> Each person who conducts underground mining which results in subsidence that causes material damage or reduces the value or reasonably foreseeable uses of the surface lands shall restore the land to a condition capable of supporting uses it was capable of supporting before subsidence. *He shall also, where such person does not specifically possess the right to subside without liability to surface owners, at the option of the owner of each such damaged structure:*
>
> 1. Restore, rehabilitate or remove and replace each damaged structure promptly after the damage is suffered, to the condition it would be in if no subsidence had occurred; or
>
> 2. Purchase the damaged structure for its fair market, presubsidence value and shall promptly, after subsidence occurs, insure that it does not constitute a public nuisance or a hazard to health and safety or the environment; or
>
> 3. Compensate the owner of any surface structure in the full amount of the diminution in value resulting from subsidence.

Chapter 20–6, Series VII (1982) Section 7C.02(b) (emphasis added).

*Coal Co.,* 806 F.Supp. 1278, 1284 (N.D.W.Va. 1992).

---

**9.** It was not until some years later that the United States District Court for the Northern District of West Virginia resolved this issue by concluding that the 1979 federal regulation and 1981 state regulation did not supersede West Virginia state common law related to deed waivers of subjacent support. *See Smerdell v. Consolidation*

**10.** The DOE's authority to promulgate regulations in accordance with WVSCMRA originates in West Virginia Code § 22A–3–2.

In 1984, the United States District Court remanded the 1983 federal regulation because the court determined that the OSM had not provided a sufficient opportunity for public comment on the regulation as required by the Administrative Procedures Act. *In re: Permanent Surface Mining Regulation Litigation,* No.79–1144, 21 ERC 1724, 1732, 1984 WL 178930 (D.D.C.1984). Upon completion of this litigation, the OSM re-proposed the exact same subsidence provision that expressly deferred to state law with respect to damage to surface structures. 50 Fed.Reg. 27910 at 27911 (July 8, 1985). On February 17, 1987, the OSM issued the final rules promulgated pursuant to the *In re: Permanent Surface Mining Regulation Litigation* and "[u]nder the final rule, operator responsibility for material damage to structures or facilities resulting from subsidence will derive from applicable provisions of State law." 52 Fed.Reg. 4860 (February 17, 1987).[11]

On September 9, 1988, West Virginia revised the state regulation to track the federal language as part of a "Repealer Package:"
*Material Damage.* The operator shall:

. . . .

(2) *To the extent required under applicable provisions of State law,* either correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from subsidence. Repair of damage includes rehabilitation, restoration, or replacement of damaged structures or facilities . . . .

38 W. Va.C.S.R. § 2–16.2 (1988) (emphasis added). This language, however, was not approved by the state's legislative rulemaking review committee and was thus never acted upon by the OSM. It was not until April 26, 1989, that the state submitted the above-mentioned language to the OSM for its approval after a new package of state regulation revisions was approved by the state's legislative rulemaking review committee.[12]

While the regulation was awaiting the OSM approval, on April 12, 1990, the United States District Court for the District of Columbia rejected the state law deference contained in 30 Code of Federal Regulation § 817.121(c)(2) (1988). *National Wildlife Federation v. Lujan,* 733 F.Supp. 419, 426–429 (D.C.1990), *rev'd,* 928 F.2d 453 (D.C.Cir. 1991). According to the district court, an operator had a duty under SMCRA to repair or compensate an owner for subsidence damage to structures regardless of any waiver under state common law. *Id.* at 426.

In response to the *Lujan* decision, on May 23, 1990, the OSM approved the West Virginia regulation that originally was submitted on April 26, 1989, with the exception that the OSM did not approve the following language deferring to state law because of the *Lujan* decision: "[t]o the extent required under applicable provisions of State law." 55 Fed. Reg. 21304 at 21331 (May 23, 1990). This federal register notice was followed by a letter dated June 22, 1990, from W. Hord Tipton, the Deputy Director of Operations and Technical Services of the OSM, to Larry George, then Commissioner of the West Virginia DOE, notifying him that due to the *Lujan* decision, even though the OSM's disapproval of the language deferring to state law was sufficient to bring the state regulation into accord with the federal regulation pursuant to 30 Code of Federal Regulations § 732.17(d), "to avoid confusion, I recommend that you amend the rule in question to remove the disapproved language."

Consequently, on January 17, 1991, the DEP proposed, and the legislative rulemak-

---

**11.** Also, in the 1987 federal register notice the OSM noted the status of West Virginia's regulatory program:

[I]t appears that West Virginia favors the change since it immediately and voluntarily implemented the change promulgated in the 1983 final rule by amending its State program to eliminate the absolute requirement to restore imposed by the 1979 OSMRE rules. . . . In any event, because . . . West Virginia al-

ready ha[s] programs which are consistent with this final rule, there will be no change required from the status quo.

52 Fed.Reg. 4865 (February 17, 1987).

**12.** According to the Appellees' brief, the regulatory reform package that the state submitted for the OSM approval on April 26, 1989, was revised by the state on December 19, 1989, and February 7, 1990.

ing review committee agreed, that the following language in the West Virginia surface mining regulations at 38 West Virginia Code of State Regulations § 2–16.2 be deleted to bring that regulation into accord with the *Lujan* decision: "To the extent required under applicable provisions of State law." The regulation was to take effect on June 1, 1991. This change, however, was never approved by the OSM as required by 30 Code of Federal Regulations § 732.17(g).[13]

Subsequently, on March 22, 1991, the United States Court of Appeals for the District of Columbia Circuit overruled the February 12, 1990, district court ruling in *Lujan. See National Wildlife Federation v. Lujan*, 928 F.2d 453 (D.C.Cir.1991). The court of appeals reversed the district court by "declin[ing] to hold that the operators' duty to compensate for all subsidence damage to structures is essential to the SMCRA scheme to prevent subsidence." *Id.* at 458. Thus, the court of appeals concluded that SMCRA does *not* impose a duty to restore structures damaged by mine subsidence and, therefore, the "subsidence regulation is based on a permissible interpretation of the SMCRA." *Id.* at 460.

Reacting to the court of appeals decision in *Lujan,* on April 17, 1991, OSM Deputy Director W. Hord Tipton once again wrote to Mr. E.W. Wayland, then Commissioner of the West Virginia DOE, notifying him of the court of appeals' decision. The deputy director advised the commissioner as follows:

"Since these Federal rules [deferring to state where subsidence damage to structures is at issue] are now restore to full force and effect,[14] the letter dated June 22,

1990 that I sent to you concerning the repair of subsidence damage to structures should be *disregarded.* We will shortly initiate rulemaking to remove 30 CFR 948.15(k)(11), which disapproved the phrase "to the extent required under applicable provisions of State law" in the State regulations at CSR 38–2–16.2(c)(2). Please note that no State program changes were required by my previous letter and none are needed now[.]" (Footnote added).

Subsequently, the OSM issued a federal register notice rescinding the limitation placed on the West Virginia state program in their May 23, 1990, notice.[15] 56 Fed.Reg. 50256 (October 4, 1991).

■ The Appellants contend that the regulation that deleted any deference to state law with regard to structure repair resulting from subsidence that was to take effect on June 1, 1991, was the controlling regulation at the time Consol misrepresented to them that it had no liability for damage to structures. The Appellants' argument, however, that because of this regulation, Consol knew or had reason to know that the law in effect in this state at the time Mr. Shelek was talking with them required Consol either to repair subsidence damage or to compensate the owner for the damage is flawed.

■ It is clear that in order for the regulation that was supposed to take effect on June 1, 1991, to have actually become effective, it first had to be approved by the OSM, as indicated by the following provision:

(g) Whenever changes to laws or regulations that make up the approved State

13. This federal regulation provides:
(g) Whenever changes to laws or regulations that make up the approved State program are proposed by the State, the State shall immediately submit the proposed changes to the Director as an amendment. *No such change to laws or regulations shall take effect for purposes of a State program until approved as an amendment.*
30 C.F.R. § 732.17(g) (emphasis added).

14. It is undisputed that the pertinent federal regulations in effect at the time the Appellees made their representations to the Appellants expressly limited the obligation of an operator to repair or compensate an owner for damage to structures

"[t]o the extent required under applicable provisions of State law." 30 C.F.R. § 817.121(c).

15. According to the Appellees, the state withdrew the entire package of the January 17, 1991, proposed amendments to the West Virginia regulatory program at the OSM's request following the court of appeals' decision in *Lujan. See* 928 F.2d at 460. It was not until July 30, 1993, that the proposed change in the subsidence regulation deleting the language expressly deferring to state law in regard to subsidence damage to structures was resubmitted to the OSM by the state—nine months after passage of the national Energy Policy Act of 1992.

program are proposed by the State, the State shall immediately submit the proposed changes to the Director as an amendment. *No such change to laws or regulations shall take effect for purposes of a State program until approved as an amendment.*

30 C.F.R. § 732.17(g) (emphasis added). We acknowledged the importance of this regulation in *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Division of Environmental Protection,* 191 W.Va. 719, 447 S.E.2d 920 (1994), when we stated:

> The DEP's contention that 38 W. Va. C.S.R. § 2–12.4(d) (1993) does not impose a mandatory, nondiscretionary duty on the DEP to utilize money from the SRF [ (Special Reclamation Fund) ] to complete reclamation at all bond forfeiture sites, including AMD [ (acid mine drainage) ] treatment and abatement, is without merit. The 1993 version of that regulation must be approved by the OSM to be effective.... The OSM has not approved the 1993 version of that regulation.

191 W.Va. at 724, 447 S.E.2d at 925 n. 23. Accordingly, pursuant to 30 Code of Federal Regulations § 732.17(g), whenever changes to laws or regulations that make up the approved state program regarding surface mining reclamation are proposed by the state, no such change to the laws or regulations shall take effect for purposes of a state program until approved as an amendment by the OSM.

It appears from the record before us that the OSM never approved or disapproved the 1991 regulation that the state had submitted.[16] Consequently, the Appellants rely upon the OSM's approval of the state's regulation on May 23, 1990, wherein the OSM disapproved the language deferring to state law regarding structure damage due to the district court opinion in *Lujan,* as, in essence, a pre-approval of the regulation that

was to be effective June 1, 1991. The Appellants' pre-approval argument, however, ignores all the events that occurred between May 23, 1990, and June 1, 1991.

Specifically, the pre-approval argument fails to take into account the United States Court of Appeals reversal of the district court in *Lujan* on March 22, 1991, on the grounds that the SMCRA does not impose a duty to restore structures damaged by subsidence. *See* 928 F.2d at 458. The effect of the court of appeals' decision was to restore the federal regulation to its "full force and effect," as indicated by the OSM's deputy director's letter to the DOE commissioner. While the Appellants argue that "[d]espite knowledge of the Court of Appeals ruling, West Virginia did not promulgate a new structure repair regulation restoring the state law limitation ... clearly ignor[ing] the Appeals Court decision[,]" they overlook that the reason the state took no action was because the deputy director of the OSM informed the DEP commissioner to disregard his prior letter that initiated the regulation amendment which deleted state law deference. Furthermore, the deputy director stated that no action was necessary by the state because the OSM was going to remove its prior disapproval of the language "[t]o the extent required under applicable provisions of State law." [17]

Additionally, to accept the Appellants' argument that the state ignored the court of appeals decision in *Lujan* because the state wanted to impose a duty upon operators to correct or compensate a landowner for structural damage arising from subsidence damage would require us to disregard our decision in *Canestraro v. Faerber,* 179 W.Va. 793, 374 S.E.2d 319 (1988). In syllabus point one of *Canestraro,* we held that

> [w]hen a provision of the West Virginia Surface Coal Mining and Reclamation Act, *W. Va.Code,* 22A–3–1 *et seq.,* is inconsis-

---

16. The OSM regulations also require the agency to issue a federal register notice on any proposed state program amendment and accept public comment, prior to the OSM either approving or disapproving the amendment. *See* 30 C.F.R. § 732.17(h). There was no notice or opportunity for public comment regarding the state regulation.

17. The deputy director's letter was followed by the federal register notice rescinding the limitation originally placed on the state program by the OSM in response to the district court's opinion in *Lujan.* 56 Fed.Reg. at 50266.

tent with federal requirements in the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.,* the state act must be read in a way consistent with the federal act.

179 W.Va. at 793, 374 S.E.2d at 319, Syl. Pt. 1; *accord Rose v. Oneida,* 195 W.Va. 726, 732, 466 S.E.2d 794, 800 (1995)("*Oneida II*") (stating that "under the rule of primacy recognized in *Canestraro,* and its progeny, we are required to give deference to the federal law" if more than minor variations existed in the language of the state statute as compared to the federal counterpart and the respective regulations).

■ In light of the principle established in the *Canestraro* decision, we hold that a state regulation enacted pursuant to WVSCMRA must be read in a manner consistent with federal regulations enacted in accordance with SCMRA. Therefore, it is certainly possible that if the state regulation in existence at the time the Appellants aver that the Appellees misrepresented the state of the law to them is read in a manner consistent with the federal regulation, Consol was under no duty to repair structural damage that resulted from subsidence damage it caused, since it was clear that no duty existed under the federal regulation.

Accordingly, we cannot find that the trial court improperly granted a summary judgment based upon the Appellants' theory that the state regulation mandated that Consol repair the structural damage to their property. Since the whole procedural history behind the pertinent regulation is murky at best, it is impossible to find that the Appellees intentionally made material and false representations to the Appellants regarding their liability according to the regulations. *See* Syl. Pt. 1, *Lengyel,* 167 W.Va. at 272–73, 280 S.E.2d at 67.

B.

STATE'S COMMON LAW

■ We must also examine the Appellees' representations to the Appellants in

connection with the state's common law regarding subjacent support. It is undisputed that West Virginia common law permits surface owners to waive the right to subjacent support. As we stated in the syllabus of *Rose v. Oneida Coal, Co.,* 180 W.Va. 182, 375 S.E.2d 814 (1988) ("*Oneida I*"):

Under the West Virginia common law of property, the well recognized and firmly established rule is that when a landowner has conveyed the minerals underlying the surface of his land, he retains the right to the support of the surface in its natural state, but the owner of land may release or waive his property right of subjacent support by the use of language that clearly shows that he intends to do so; however, this law has been modified to some extent by the enactment of the West Virginia Coal Mining and Reclamation Act, *W. Va. Code,* 22A–3–1 [1985], *et seq.* and the extent of such modification will be ruled upon when properly presented.

*Id.* at 183, 375 S.E.2d at 815; *accord* Syl. Pt. 1, *Winnings v. Wilpen Coal Co.,* 134 W.Va. 387, 59 S.E.2d 655 (1950), *Continental Coal Co. v. Connellsville By–Product Coal Co.,* 104 W.Va. 44, 55–56, 138 S.E. 737, 741 (1927). The only requirement for the waiver to be valid is that the language purporting to waive the property right of subjacent support must show a clear expression of the landowner's intent to accomplish a waiver. *See Oneida I,* 180 W.Va. at 183, 375 S.E.2d at 815, Syl. Pt. 1.

Courts in this jurisdiction that have examined the validity of subjacent support waivers within severance deeds have consistently upheld the validity of these waivers under this state's common law. In *Sendro v. Consolidation Coal Co.,* No. 89–0009–W(S), 1991 WL 757723 (N.D.W.Va. March 27, 1991), the United States District Court for the Northern District of West Virginia, in an order granting the defendant partial summary judgment,[18] examined subjacent support waiver language identical to the language contained in the severance deeds entered in the instant case. *Id.,* slip op. at 1. Like the

---

18. The district court found that the plaintiff's breach of contract action was not affected by the subjacent support waiver and contained issues of

fact that had to be decided by a jury. *Sendro, supra,* slip op. at 11.

Appellants in the present case, the plaintiffs in *Sendro* had entered into an agreement with the defendant that governed compensation for damages to the plaintiffs' real estate resulting from longwall mining.[19] *Id.*, slip op. at 2.

The *Sendro* court addressed whether the SMCRA and the WVSCMRA had changed this state's common law, thereby rendering the subjacent support waivers invalid. *Id.*, slip op. at 11–14. The district court, in concluding that such a change had not occurred, reasoned:

> The District of Columbia Court has held that "[t]here is no indication from the Act that Congress intended to pre-empt state common law. Indeed, it is apparent that the Act and state common law can co-exist and serve the goals of the statute." *In re Permanent Surface Mining Regulation Litigation II, Round II,* 21 Env't Rep. Cas. (BNA) 1724 [1984 WL 178930] (D.D.C. Oct. 1, 1984). That court also found that "[s]tate law will be applied in this area to the extent it is consistent with the statutory scheme set out by Congress." *Id.*

*Sendro,* slip op. at 14; *accord Giza v. Consolidated Coal Co.,* No. 85–0056–W(S) (N.D.W.Va. December 12, 1991); *Coffield v. Consolidated Coal Co.,* No. 90–C–181M (W. Va. Cir. Ct. Marshall County January 9, 1992).

In *Smerdell v. Consolidation Coal Co.,* 806 F.Supp. 1278 (N.D.W.Va.1992), another apposite case, property owners brought action the defendant coal mining company to recover damages to property allegedly caused by coal mining activities. *Id.* at 1279. The plaintiffs owned the surface rights to real property, but

> plaintiffs' predecessors in title conveyed to defendant's predecessors in title "all of the coal of the Pittsburgh or River Vein in and under" plaintiffs' real property, "[t]ogether with the right to mine and remove all and every part of said coal with free access at all times for said purposes, and without liability for any damage to the overlying

strata, or to anything therein or thereon, in mining and removing said coal."

*Id.* at 1280. The defendant filed a motion for summary judgment arguing that the subjacent support waiver contained within the 1905 deed waived the plaintiffs' right to subjacent support as well as any right to recover for subsidence damages caused by the defendant's negligent mining. The plaintiffs, however, contended that SMCRA and WVSCMRA rendered the purported waivers of the plaintiffs' predecessors in title void. *Id.*

In granting the defendant's motion for summary judgment, the district court stated: "Under West Virginia common law ... by applying the facts and considering the language in the 1905 deed, plaintiffs by their predecessors validly waived any subjacent support for the tract in question as well as any right to recover from defendant for damages resulting from subsidence caused by negligent mining." *Id.* at 1283. Moreover, the court concluded "that SMCRA and WVSCMRA have not rendered invalid the common law of West Virginia on waivers of the right to subjacent support." *Id.* at 1284.

Consequently, the above-mentioned court decisions indicate that the SMCRA and the WVSCMRA had not pre-empted this state's common law. Because of these decisions, we cannot find that the Appellees' representation to the Appellants that Consol was not legally liable to them for damages resulting from subsidence in light of the valid severance deed waiver of subjacent support was either made with the intent to deceive or was a material and false representation. *See* Syl. Pt 1, *Lengyel,* 167 W.Va. at 272–73, 280 S.E.2d at 67.

Based upon our conclusion that the Appellants failed to make sufficient showing on essential elements of their case that they have the burden to prove, we find that lower court committed no error in entering summary judgment in favor of the Appellees. Syl. Pt. 4, *Painter,* 192 W.Va. at 190, 451

**19.** Under the terms of the agreement, the defendant paid the plaintiffs $5,325 consideration and agreed to reimburse the plaintiffs for damage to their home in accordance with certain procedures. *Id.,* slip op. at 2.

S.E.2d at 756. Accordingly, we affirm the circuit court's decision.

Affirmed.