549 S.E.2d 280

**DK EXCAVATING, INC.,
Plaintiff/Petitioner
Below, Appellee,**

v.

**Michael MIANO, Director, West Virginia
Division of Environmental Protection,
Defendant/Respondent Below, Appellant**

No. 28478.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 7, 2001.

Decided Feb. 22, 2001.

Dissenting Opinion of Justice
Maynard July 6, 2001.

John J. Giblin, Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorney for the Appellee.

Thomas L. Clarke, Charleston, West Virginia, Attorney for the Appellant.

Patrick C. McGinley, Morgantown, West Virginia, and Sean P. McGinley, DiTrapano, Barrett & DiPiero, Charleston, West Virginia, for Amicus Curiae, The West Virginia Highlands Conservancy.

ALBRIGHT, Justice:

The West Virginia Division of Environmental Protection ("DEP") appeals from the October 1, 1999, order of the Circuit Court of Nicholas County, which reversed the West Virginia Surface Mine Board's decision requiring Appellee DK Excavating, Inc. ("DK") to obtain a surface mining permit in connection with the removal of coal from a site where DK intends to build an equipment shop. In making its ruling, the circuit court relied on a 1997 amendment to the definition of "surface mining" under the West Virginia Surface Mining Control and Reclamation Act ("WVSMCRA"), West Virginia Code §§ 22-3-1 to -32 (1997) (Repl. Vol.1998), which exempts from such definition coal extraction that is an incidental part of certain types of land development. *See* W.Va.Code § 22-3-3(u)(2)(ii). Relying on the federal and state supremacy clauses,[1] as well as principles of preemption, DEP argues that the circuit court erred in ruling that the amended definition of surface mining is enforceable notwithstanding express disapproval of that definition by the federal Office of Surface Mining ("OSM"). Upon our review of all applicable law and regulations, we conclude that the circuit court did commit error, and accordingly, reverse.

I. Factual and Procedural Background

On November 17, 1997, DK sought approval from DEP to proceed with its plan to excavate, remove, and sell the coal from a two-acre site where it intended to construct an equipment shop and yard without obtaining a surface mining permit.[2] *See* W.Va. Code §§ 22-3-8, -9. DEP informed DK that it could not approve DK's request to proceed without a surface mining permit based on current law, but indicated that new state regulations were still pending before the OSM that might allow DK to remove coal incidental to a construction project without a permit.[3] DK appealed this decision to the West Virginia Surface Mine Board, which issued a final order dated February 9, 1999, affirming DEP's decision.

DK sought an appeal from the decision of the West Virginia Surface Mine Board in the Circuit Court of Nicholas County. Upon its consideration of the issue, the circuit court ruled by order entered on October 1, 1999, that DK's proposal did not come within the definition of "surface mining," based upon the 1997 amendment to West Virginia Code § 22-3-3 and its express exemption of "[c]oal extraction authorized as an incidental part of development of land for commercial, residential, industrial, or civic use." W.Va.Code § 22-3-3(u)(2)(ii). DEP appeals from the circuit court's determination that no surface mining permit was required.

II. Standard of Review

▪ Our review of a contested case initially reviewed by the circuit court under the West Virginia Administrative Procedures Act ("APA"), West Virginia Code § 29A-5-4(g) (1998), is de novo as we explained in *West Virginia DEP v. Kingwood Coal Co.*, 200 W.Va. 734, 746, 490 S.E.2d 823, 835 (1997). This Court reviews an appeal that is brought under the APA pursuant to the same six-factor test set forth in West Virginia Code § 29A-5-4(g) and no special weight is accorded to the lower court's conclusions of law. *Davis v. West Virginia Dep't of Motor Vehicles*, 187 W.Va. 402, 405-06, 419 S.E.2d 470, 473-74 (1992).

III. Discussion

▪ At the center of this case is the impact of an amendment to WVSMCRA, which exempted from the definition of surface mining "[c]oal extraction authorized as an incidental part of development of land for commercial, residential, industrial, or civic use." W.Va.Code § 22-3-3(u)(2)(ii). The parties are in agreement that the coal extraction at issue in this case comes within the ambit of this statutory definition, which is referred to as the "private construction exemption." They do not agree, however, as to the enforceability of this statutory exemption in

---

1. U.S. Const. Art. VI; W.Va. Const. Art. I, § 1.

2. The parties stipulated to the facts at issue when they were before the West Virginia Surface Mine Board.

3. DEP suggested to DK that the issue might be revisited after the regulations were reviewed by OSM, assuming the approval of said regulations.

light of both federal law and express federal action disapproving this statutory language.

■ DEP argues that both federal and state law prevent it from enforcing the private construction exemption. With the enactment of the federal Surface Mining Control and Reclamation Act ("SMCRA") in 1977,[4] Congress set forth a comprehensive scheme, the purpose of which was to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a) (1994); *accord* W.Va.Code § 22–3–2 (stating that "[t]he Legislature finds that it is essential to the economic and social well-being of the citizens of the state of West Virginia to strike a careful balance between the protection of the environment and the economical mining of coal"). Under the statutory scheme of SMCRA, the states are given a choice as to whether they wish to regulate surface mining activities that occur within their respective boundaries.[5] *See* 30 U.S.C. § 1253. Any state that opted to assume regulatory control of its surface mining activities was required by the provisions of SMCRA to submit a state program to OSM for approval "which demonstrates that such State has the capability of carrying out the provisions of this chapter [25] and meeting its purposes ...." *Id.* West Virginia, like many other states, decided to regulate its own surface mining activities and submitted a state plan which was approved by OSM.[6] Under federal law,[7] any subsequent changes to that approved state plan must also be approved by OSM, as we recognized in syllabus point three of *Schultz v. Consolidation Coal Co.*, 197 W.Va. 375, 475 S.E.2d 467 (1996), *cert. denied*, 519 U.S. 1091, 117 S.Ct. 767, 136 L.Ed.2d 713 (1997):

Pursuant to 30 Code of Federal Regulation § 732.17(g), whenever changes to laws or regulations that make up the approved state program regarding surface mining reclamation are proposed by the state, no such change to the laws or regulations shall take effect for purposes of a state program until approved as an amendment by the Office of Surface Mining Reclamation and Enforcement.

Consistent with its obligation to gain federal approval of any amendments to a state surface mining plan, DEP submitted the amended statutory definition of surface mining with its inclusion of the private construction exemption to the OSM. In a ruling dated February 9, 1999, the OSM denied approval to the amended definition, stating:

The Director recognizes that requiring all privately financed construction activities in West Virginia which also remove coal to be permitted and regulated as surface coal mining operations may, in some instances, present both a hardship for the regulatory program and be a roadblock to development within the State. Nevertheless, OSM is bound by the constraints of SMCRA, both in its plain language and in clear expressions of Congressional intent. Congress expressly considered and rejected a blanket exemption from the definition of "surface mining operations" for privately financed construction. S.Rep.No. 95–337, 95th Cong., 1st Sess. 112 (1977). This West Virginia program amendment proposes precisely the same blanket exemption which Congress explicitly rejected. Therefore, the Director finds that the proposed provision is less stringent than SMCRA at section 528 and cannot be approved.

DK suggests that the provisions of West Virginia Code § 23–3–3(u)(2)(ii) are valid and

---

**4.** *See* 30 U.S.C. §§ 1201–1328 (1994).

**5.** According to DK, the following states have opted in favor of federal regulation of the surface mining activities in their respective states: Arizona, California, Georgia, Idaho, Massachusetts, Michigan, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, and Washington.

**6.** The plan was conditionally approved by OSM on January 21, 1981. *See* 46 Fed.Reg. 5915–5956 (1981).

**7.** Federal law requires that,

> [w]henever changes to laws or regulations that make up the approved State program are proposed by the State, the State shall immediately submit the proposed changes to the Director [OSM] as an amendment. **No such change to laws or regulations shall take effect for purposes of a State program until approved as an amendment.**

30 C.F.R. § 732.17(g) (emphasis supplied).

can be enforced notwithstanding the express disapproval by OSM. Under its reading of SMCRA, the preemption provisions of the federal act are not automatic, but require an affirmative act on the part of the federal government. Focusing solely on the language of 30 U.S.C. § 1254, which provides for federal regulation of state surface mining activities where states either fail to initially submit a state program or fail to maintain their approved state programs, DK argues that the state program remains valid until a federal program is developed.[8] *See* 30 U.S.C. § 1254(a)(1)-(3), (g).

What DK overlooks in its analysis of this issue is the language of 30 U.S.C. § 1255, which provides that any "State law or regulation [that] is inconsistent with the provisions of this chapter [25]" is superseded by the provisions of SMCRA. The only limitation to this rule is for "any State law or regulation ... which provides for more stringent land use and environmental controls and regulations of surface coal mining and reclamation operation than do the provisions of this chapter...." 30 U.S.C. § 1255(b). Through the language of 30 U.S.C. § 1255, Congress has made clear that from the date of SMCRA's enactment (August 3, 1977), any state regulation in effect or subsequently enacted would be preempted where state laws are inconsistent with the provisions of SMCRA, unless the state laws provide for regulation more stringent than that required by SMCRA. *See* 30 U.S.C. § 1255(b).

Given the OSM's express determination that the private construction exemption is inconsistent with SMCRA, DEP maintains that it cannot view West Virginia Code § 22–3–3(u)(2)(ii) as an enforceable state law. In support of its position, DEP looks to the Supremacy Clause found in the United States Constitution and its mandate that the "Laws of the United States ... shall be the supreme Law of the Land." U.S. Const. Art. VI. The West Virginia constitution specifical-

ly acknowledges our obligation to observe federal law in stating similarly that federal law "shall be the supreme law of the land." W.Va. Const. Art. I, § 1. DEP takes the position that its hands are tied by federal law, based on the clear statutory pronouncement of SMCRA's preemptive effect with regard to state plans that are inconsistent with its provisions. *See* 30 U.S.C. § 1255.

Citing the seminal decision of *Hodel v. Virginia Surface Mining and Reclamation Association, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), DK maintains that the United States Supreme Court's decision to uphold SMCRA against various constitutional challenges was based on its recognition that Congress cannot make the states follow a particular course of action. In rejecting the Commerce Clause challenge [9] to SMCRA in *Hodel*, the Court clearly acknowledged that "there can be no suggestion that the Act [SMCRA] commandeers the legislative processes of the States by *directly* compelling them to enact and enforce a federal regulatory program." 452 U.S. at 288, 101 S.Ct. 2352 (emphasis supplied). This is because an individual state may choose to "either implement its[ ] [own program] or else yield to a federally administered regulatory program." *Id.* at 289, 101 S.Ct. 2352. The linchpin, however, of the Supreme Court's upholding of SMRCA in *Hodel* was its conclusion that the appellees [10] had failed to demonstrate the first prong of the long-established test for Commerce Clause violations: "First, there must be a showing that the challenged statute regulates the 'States as States.'" 452 U.S. at 287, 101 S.Ct. 2352 (quoting *National League of Cities v. Usery*, 426 U.S. 833, 854, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)). In renouncing the claim that SMCRA wrongfully coerces the states to act, the Supreme Court stated: "The most that can be said is that the Surface Mining Act establishes a program of cooperative federalism that allows the States, within limits established by

---

8. This argument proves indefensible when viewed against the language of 30 C.F.R. § 732.17(g), which clearly states that no change to an approved state plan "shall take effect for purposes of a State program until approved as an amendment."

9. In addition to finding no Commerce Clause violation in *Hodel*, the United States Supreme

Court similarly rejected constitutional challenges to SMCRA based on the Just Compensation Clause and the Due Process Clause. *See* 452 U.S. at 265–66, 101 S.Ct. 2352.

10. The Virginia Surface Mining and Reclamation Association, Inc.

federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." 452 U.S. at 289, 101 S.Ct. 2352. Continuing to dissect the appellees' contentions, the Supreme Court reasoned that the only way SMCRA could be found to violate the Commerce Clause was by "assum[ing] that the Tenth Amendment limits congressional power to preempt or displace state regulation of private activities affecting interstate commerce." *Id.* at 289–90, 101 S.Ct. 2352. After pronouncing that "[t]his assumption is incorrect," the Supreme Court elucidated further:

> A wealth of precedent attests to congressional authority to displace or pre-empt state laws regulating private activity affecting interstate commerce when these laws conflict with federal law. Although such congressional enactments obviously curtail or prohibit the States' prerogatives to make legislative choices respecting subjects the States may consider important, the Supremacy Clause permits no other result.

*Id.* at 290, 101 S.Ct. 2352; *see also F.E.R.C. v. Mississippi*, 456 U.S. 742, 766, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982) (stating that "it has always been the law that state legislative and judicial decisionmakers must give preclusive effect to federal enactments concerning nongovernmental activity, no matter what the strength of the competing local interests"); *Brown v. Red River Coal Co.*, 7 Va. App. 331, 373 S.E.2d 609, 610 (1988) (stating that "in substantive areas preempted by the federal government, such as coal surface mine reclamation, states may not enact laws that are less restrictive than or inconsistent with the federal law").

▋ As DEP observes, this Court has on multiple occasions recognized that our state mining laws have to be interpreted consistent with federal law. We acknowledged this principle in syllabus point one of *Canestraro v. Faerber*, 179 W.Va. 793, 374 S.E.2d 319 (1988), in stating that

> When a provision of the West Virginia Surface Coal Mining and Reclamation Act, *W.Va.Code*, 22A–3–1 *et seq.*, is inconsistent with federal requirements in the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 *et seq.*, the state act must be read in a way consistent with the federal act.

*See also Rose v. Oneida Coal Co.*, 195 W.Va. 726, 466 S.E.2d 794 (1995); *Russell v. Island Creek Coal Co.*, 182 W.Va. 506, 389 S.E.2d 194 (1989). We have also previously determined that amendments to WVSMCRA cannot take effect without OSM approval. *See Schultz*, 197 W.Va. at 376, 475 S.E.2d at 468, syl. pt. 2; *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia DEP*, 191 W.Va. 719, 724, 447 S.E.2d 920, 925 n. 23 (1994).

▋ It is beyond dispute that once a state plan [11] is approved under SMCRA, any subsequent amendments to such plan do not become effective until approved by the OSM, and may not be approved by OSM if inconsistent with SMCRA. Accordingly, since the OSM has concluded that the amendment to our state plan, codified as West Virginia Code § 22–3–3(u)(2)(ii), is inconsistent with SCMRCA, that proposed amendment cannot be deemed as an amendment to the approved West Virginia surface mining plan. We therefore conclude that the lower court was in error in ruling that no permit was required based solely upon the provisions of West Virginia Code § 23–3–3(u)(2)(ii).[12] Accordingly, the decision of the Circuit Court of Nicholas County is hereby reversed.

Reversed.

MAYNARD, Justice, dissenting.

(Filed July 6, 2001)

I would affirm the circuit court's order which ruled that DK Excavating is not re-

---

11. It is noted that because the Legislature has elected to provide for, and the Executive has opted to apply for and has obtained approval of this state plan, subsequent amendments to the plan are rendered ineffective unless and until approved by OSM. It is for the Legislature and the Executive, not this Court, to determine when, and if, it is preferable to revert to federal regulation of this state's surface coal activities.

12. If the necessity for a surface mining permit is hurting further economic development, as DK represents, perhaps the DEP could fashion a fast-track process for the consideration and approval of permit applications involving small development sites such as that at issue in this case.

quired to obtain a surface mining permit under the facts of this case.

The circuit court was correct in holding that DK's proposal to excavate, remove, and sell coal from its two-acre site does not come within the definition of "surface mining," based upon the express exemption in W.Va. Code § 22–3–3(u)(2)(ii) (1997), of "[c]oal extraction authorized as an incidental part of development of land for commercial, residential, industrial, or civic use[.]" Unlike the majority, I am not convinced that this provision is automatically preempted by SMCRA.

The removal of the coal in question is *de minimis*. It concerns a small area and is incidental to the construction of an equipment shop. In light of these facts, I see no reason to make this a federal question.

Accordingly, I respectfully dissent.